ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNIVERSITY OF KANSAS and KANSAS ATHLETICS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 06-2341-JAR |
| LARRY SINKS, CLARK ORTH, LARRY SINKS ENTERPRISES, INC. and VICTORY SPORTSWEAR, L.L.C. (collectively d/b/a/ Joe-College.com), | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM AND ORDER

The Court now considers the Motion for Reconsideration (Doc. 231) filed by plaintiffs

University of Kansas and Kansas Athletics, Inc. (collectively "KU").  On March 19, 2008, the

Court entered a Memorandum and Order granting in part and denying in part plaintiffs' motion

for summary judgment ("Order") (Doc. 228).  KU now seeks reconsideration of the Order with

regard to certain T-shirt designs for which this Court denied summary judgment and with regard

to the Court's finding that the mark "Jayhawks," as used on T-shirts is not incontestable as a

matter of law.  For the reasons explained in detail below, the Court denies plaintiffs' motion.

*Background*

Plaintiffs allege various trademark claims against defendants Larry Sinks, Clark Orth,

Larry Sinks Enterprises, Inc. and Victory Sportswear, L.L.C. ("Victory Sportswear").  These

claims involve the sale of certain T-shirts at the Joe-College.com retail store and website that

reference KU.  The parties filed cross motions for summary judgment that the Court ruled upon

in its March 19, 2008 Order.  In that Order, the Court granted summary judgment on the

trademark infringement claim to plaintiffs with regard to four T-shirt designs that, according to

defendants, were only available for sale prior to the initiation of this lawsuit.[1]  The Court based

this ruling in part on the overwhelming similarity of the designs to KU's marks.  The Court

noted that the striking similarities also triggered a presumption of intent to infringe and that no

disclaimers were present on the Joe-College.com retail store or website during the time they

were offered for sale.  Because these T-shirts were referred to by plaintiffs as "examples" in their

summary judgment briefs, the court invited plaintiffs to identify any additional shirt designs that

"that similarly include KU's marks without any other differentiating marks or additional non-

infringing language."[2]  The Court indicated that any such T-shirts were included in its ruling.

    The Court denied both motions for summary judgment with regard to defendants'

remaining T-shirt designs as it was unable to find, as a matter of law, that the likelihood of

confusion factors considered as a whole, favored either party:

> While certain factors weigh in favor of a likelihood of confusion,
> such as the degree of care exercised by purchasers and the fact that
> the products are sold in the same channels of trade, genuine issues
> of material fact remain as to the remaining key factors, such as
> similarity of the marks and strength of the marks, and a reasonable
> jury could find for either party.[3]

Specifically with regard to the similarity of the marks factor, the Court found evidence of both

similarities and differences upon which a reasonable jury could find for either party.

    The Court also discussed the incontestability of certain KU trademarks in determining

---

[1](Doc. 144, Ex. A. at 1–3, 85.)

[2](Doc. 228 at 34 n.89.)

[3](Id. at 52.)

whether they were protectable as a matter of law.  Plaintiffs maintained in their motion that the marks "KU," "Kansas," "Jayhawks," and the Jayhawk design are incontestible under 15 U.S.C. § 1065.  Under this statute, a registrant's continuous use of a mark for five consecutive years after the date of registration renders it "incontestable," subject to certain provisions.  To be incontestable means that the mark cannot be challenged as lacking secondary meaning.[4]   The Court found that the "Jayhawks" mark in this context did not qualify as incontestible because the application to register it for use on merchandise that included T-shirts was only just filed on December 21, 2006.  The mark, however, has been registered for some time for other uses, including providing intercollegiate athletic exhibitions, printed awards, pencils, pens, prints, furniture, beverage containers, and coolers.[5]

***Motion for Reconsideration***

Local Rule 7.3(a) provides that "[m]otions seeking reconsideration of dispositive orders or judgments must be filed pursuant to Fed. R. Civ. P. 59(e) or 60."  Because this motion was filed within ten days of the March 19 Order, the Court construes it as a motion to alter or amend judgment under Rule 59(e).[6]   A motion to alter or amend judgment pursuant to Rule 59(e) may be granted only if the moving party can establish: (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice.[7]

---

[4]*Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 923 (10th Cir. 1986).

[5](Doc. 110 at 7–8.)

[6]*Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997).

[7]*Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995).

Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[8]

***Discussion***

Plaintiffs' motion alleges that the Court committed clear error in three ways: (1) the Court improperly conducted a side-by-side analysis of the parties' products in holding that defendants' use of the "Kansas" mark does not constitute trademark infringement as a matter of law when used on T-shirts that contain additional language on the back, (2) "the Court's ruling creates a manifest injustice to KU and its licensees because it constructively cancels KU's incontestable registration of its 'Kansas' mark by permitting infringers to use KU's trademarks if they simply add [] terms to the mark," and (3) by not finding the "Jayhawks" mark protectable as a matter of law.

### 1.      Side-by-Side Comparison

In line with this Court's March 19, 2008 Order, plaintiffs identify two additional T-shirt designs that clearly fall within the Court's grant of summary judgment and the Court agrees that its order granting summary judgment applies to these two shirt designs.[9]  Then plaintiffs "identify" forty-nine other shirts that bear "Kansas" on the front along with other language and the Joe-College.com house mark on the back that the Court explicitly found are not similar as a matter of law to plaintiffs' marks.  In so doing, plaintiffs baldly assert that the Court conducted an improper side-by-side comparison of the parties' products in analyzing the similarities and differences between the marks.

---

[8]*Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir. 1996), *cert. denied*, 520 U.S. 1181 (1997).

[9](Doc. 233, Ex. A at 1–2.)

To the contrary, the Court properly considered the similarity of the marks on the levels of sight, sound, and meaning "in the context of the marks as a whole as they are encountered by consumers in the marketplace."[10]  Plaintiffs misconstrue the prohibition of a side-by-side comparison.  In addressing a similar argument as plaintiffs make here, the Tenth Circuit has explained:

> Plaintiff contends the virtual identity of the two names, which differ only by a single "s," mandates a finding strongly in favor of plaintiff on this factor.
> We find plaintiff's argument unpersuasive.  First, *Universal* does not prohibit comparison of the parties' marks; it prohibits consideration of differences so minuscule they are only detectable via a side-by-side comparison. *See, e.g.*, *Universal*, 22 F.3d at 1531 (comparing the visual presentations of the two marks at issue); *Beer Nuts*, 805 F.2d at 926 ("The presence of the smaller [defendant's] trademark is not enough to eliminate the likelihood of confusion in this case where the products and their marks are similar because consumers typically do not engage in side by side comparison of [inexpensive] products."). Second, because we must consider the parties' trademarks in their entirety as they are experienced by consumers in the marketplace, we are not free to focus solely on name similarity.  Plaintiff's proffered analysis therefore runs against precedent.[11]

Instead of showing that the Court conducted a side-by-side comparison, plaintiffs mistakenly assert that *any* comparison by the Court was improper.  This is simply an inaccurate statement of the law.  The Court, in accordance with precedent, focused on the similarity of the marks as they appear to consumers in the marketplace.  In conducting this analysis, courts routinely look to the overall impression created by the marks to determine if a reasonable purchaser would believe

---

[10]*King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1090 (10th Cir. 1999).

[11]*Heartsprings, Inc. v. Heartspring, Inc.*,  143 F.3d 550, 554 -555 (10th Cir. 1998).

that the products originated from the same source.[12]  Likewise, with regard to these specific T-

shirts, this Court found that while

> [t]he colors and lettering of "Kansas" on these shirts are again,
> substantially similar to those of officially licensed shirts, . . . all of
> the remaining shirts that contain the mark "Kansas" on the front
> contain additional language on the back.  KU fails to point the
> Court to officially licensed materials that are similar in look, sound
> or meaning to the multitude of messages on the backs of these
> shirts, which contribute to the overall presentation of the marks.[13]

The Court went on to note that defendants' marks appear in the context of T-shirts that in many

cases "reference either sex or alcohol, use irreverent language, make insulting references to rival

universities such as Kansas State University or the University of Missouri, or reference

individual players and coaches of the KU athletic teams in contravention of an NCAA rule."  In

sum, the Court cannot conclude that its analysis concerning the similarity of these marks was

clear error.  To the contrary, the Court finds that a failure to consider the overall context in

which defendants' marks appear would constitute clear error.[14]

Plaintiffs assert for the first time in their motion for reconsideration that the language on

the back of the "Kansas" T-shirts should not be considered by the Court.  Plaintiffs argue that

---

[12]*See, e.g.*, *Universal Money Ctrs., Inc. v. AT&T*, 22 F.3d 1527, 1531 (10th Cir. 1994) (explaining that "significant differences exist in the overall design of AT&T's *card* and UMC's *cards* and ATM markings"); *Big Dog Motorcycles, L.L.C. v. Big Dog Holdings, Inc.*, 402 F. Supp. 2d 1312, 1337 (D. Kan. 2005) (comparing marks in the context in which they appear on parties' products and promotional materials); *see also Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744–45 (2d Cir. 1998) (explaining that the use of similar sounding names does not make the trademarks confusingly similar given the context in which a purchaser sees them).

[13](Doc. 228 at 36.)

[14]Plaintiffs also misinterpret the Court's Order as requiring that they compare every single allegedly infringing T-shirt manufactured by defendants to an officially licensed product.  To the contrary, the Court repeatedly pointed to plaintiffs' lack of analysis on the similarity of the marks factor, which by definition requires comparison of marks.  Because plaintiffs allege that a multitude of marks are infringed—not just one or two— it was their burden to point the Court to evidence of similarities between each mark and the allegedly infringing marks manufactured by defendants.  The Court's emphasis on this point is to simply decline to generalize all of KU's marks for purposes of the likelihood of confusion analysis.

when viewed from the front "as they necessarily must be 50% of the time" they are indistinguishable from the "Kansas" shirts that the Court granted summary judgment on. Plaintiffs urge that the physical separation between the front and back of the T-shirts means that the language on the back should not be considered when comparing the marks. Plaintiffs' argument is fundamentally flawed for a number of reasons. First, plaintiffs' approach requires some proof that consumers in the marketplace do not read the backs of T-shirts, which it has not provided.[15] Second, according to plaintiffs' own argument, the back of the T-shirts are viewed from the back "as they necessarily must be 50% of the time," where the non-infringing language appears. Third, as already discussed, the failure to consider the language on the back of these T-shirts would be clear error, as the Court would essentially be conducting a side-by-side comparison of the front of these shirts only, which is prohibited. Fourth, as the Court discussed in its Order, a reasonable jury could find that the language on the back of the T-shirts is the dominant portion of defendants' marks and serves to distinguish them from officially licensed KU products and from any sponsorship or affiliation with KU.[16]

Plaintiffs on reconsideration argue that the remaining "Kansas" T-shirts manufactured by defendants will cause post-sale confusion when viewed from the front. As the Court explained in its Order, post-sale confusion exists "when use of a trademark leads individuals (other than the

---

[15]*See Colgate-Palmolive Co. v. J.M.D. All-Start Import & Export Inc.*, 486 F. Supp. 2d 286, 290 (S.D.N.Y. 2007) (comparing only the front panels of toothpaste packaging based on (1) plaintiff's consumer study showing that consumers do not usually read the back or side panels of toothpaste packaging, and (2) because, as the non-moving party, the court was required to accept all reasonable inferences in plaintiff's favor); *World Wrestling Fed. Ent't Inc. v. Big Dog Holdings, Inc.*, 280 F. Supp. 2d 413, 432–33 (W.D. Pa. 2003) (analyzing the front and back of various allegedly infringing T-shirt designs).

[16]*See Universal Money Ctrs., Inc.*, 22 F.3d at 1531 (explaining that while the dominant portion of each mark is entitled to greater weigh, each mark should still be considered as a whole); *Big Dog Motorcycles, L.L.C.* ., 402 F. Supp. 2d at 1327–28.

purchaser) mistakenly to believe that a product was manufactured by the trademark-holder."[17]  It usually "arises in circumstances involving so-called "knock-off" products in which observers of an allegedly infringing product are confused, to the injury of the trademark owner, by the fact that the alleged infringer has produced counterfeit, imitation, or replica goods of inferior quality."[18]

As the Court noted in its Order, the only evidence plaintiffs offered in support of post-sale confusion is Erin Adams' testimony that there is no way for consumers who encounter defendants' apparel to know whether it is licensed or not and the weblog evidence, where anonymous posters asked where they could acquire defendants' T-shirts.  But this evidence is insufficient to establish post-sale confusion as a matter of law.  Plaintiffs did not present evidence that the remaining T-shirts are "knock-offs" or imitations; indeed, they agree that the language on the reverse of the T-shirts would never be licensed or condoned in any way by KU.  Further, plaintiffs did not present evidence that consumers in a post-sale environment would attribute the language on the back of these T-shirts to KU, or believe that KU sponsored them in any way.  Accordingly, the Court declines to find post-sale confusion present, as a matter of law, with regard to these T-shirts.

Finally, the Court notes that it considered the likelihood of confusion factors as a whole in denying plaintiffs' motion for summary judgment.  It found that genuine issues of material fact remain, especially with regard to the similarity and strength of the marks such that a

---

[17]*Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 432 F.3d 539, 548 (6th Cir. 2005).

[18]*Big Dog Motorcycles, L.L.C.* ., 402 F. Supp. 2d at 1327–28 (citing *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104 (2d Cir. 2000); *Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985 (Fed. Cir. 1993); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir. 1986); 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:7 (4th ed. 2005)).

reasonable jury could find for either party.  The Court declines to disturb this analysis upon reconsideration.

### 2.       Claim of Manifest Injustice

Next, plaintiffs assert that "KU's licensing program is completely destabilized by the Court's ruling that effectively allows third-parties to use KU's trademarks without a license."  In making such an assertion, plaintiffs incorrectly interpret the Court's summary judgment ruling as "constructively cancelling plaintiffs' registration of the KANSAS mark by effectively authorizing its use for any commercial purpose, so long as other non-infringing matter is added."  Plaintiffs argument amounts to a misreading of the Court's Order and a misunderstanding of the function of summary judgment and is therefore, without merit.

KU suggests that because it has a registered trademark for the mark "Kansas," the denial of summary judgment based on the Court's analysis of the likelihood of confusion factors operates to "constructively cancel" that trademark.  As the Court stated in its Order, "'[t]he fact that a trademark is the subject of a federal registration that has ripened into incontestable status should not dictate the conclusion that the mark is strong with no further analysis.'"[19]  Nor does it dictate a finding that an allegedly infringing mark creates a likelihood of confusion that amounts to trademark infringement.[20]  The Court found that a genuine issue of material fact exists as to likelihood of confusion.

The Court declines to discuss much further plaintiffs' hyperbolic claims that this Court's Order has far-reaching implications on all trademark owners.  This Court denied plaintiffs' motion for summary judgment (as well as defendants' motions for summary judgment).  To be

---

[19]*Id.* (quoting McCarthy § 11.82 at 11–16).

[20]*Universal Money Ctrs., Inc. v. AT&T*, 22 F.3d 1527, 1529 (10th Cir. 1994).

clear, the standard on summary judgment is whether there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[21]  If the moving party bears the burden of proof at trial, "it must point to evidence in the record that supports its version of all material facts and demonstrate an absence of a genuine issue of material facts."[22]  "If the moving party does not meet this burden, the court must deny summary judgment even if the nonmoving party does not produce any opposing evidence."[23]  If the moving party does meet its burden, the nonmoving party must offer more than mere allegations and denials to create a genuine issue of material fact.[24]  The Court is not to view inferences in the light most favorable to the moving party.[25]  Under this standard, the Court found that plaintiffs must not prevail as a matter of law based on the evidence presented by both parties on summary judgment.  The Court's Order <u>did not</u> rule that defendants' T-shirt designs are non-infringing as a matter of law, only that there is a genuine issue of material fact on the matter.  Accordingly, and contrary to plaintiffs' assertions, the Court made no proclamations in its Order about what language third-parties may or may not use in conjunction with KU's trademarks.

### 3.      Incontestable Status of "Jayhawks" Mark

Finally, plaintiffs argue that it was clear error for the Court not to find the "Jayhawks" mark protectable as a matter of law.  KU acknowledges in its motion that "it owns only a pending application to register the JAYHAWKS mark."  It appears that KU's assertion of clear

---

[21]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

[22]*Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting).

[23]*Id.*

[24]*Id.*

[25]*See Argo v. Blue Cross Blue Shield*, 452 F.3d 1193, 1199 (10th Cir. 2006).

error rests upon the fact that the Court did not explicitly limit its protectability finding as to the "Jayhawks" mark as it is used on T-shirts, given that the "Jayhawks" mark is incontestible with regard to its use covered by two other incontestible registrations.

To the extent KU seeks a clarification of the Court's Order, the Court agrees that its holding on the incontestibility of the "Jayhawks" mark is limited to the uses covered by the pending 2006 trademark application.  The Court did not and does not now contend that the "Jayhawks" mark is not incontestible pursuant to 15 U.S.C. § 1065 with regard to the two other registered trademarks.  The mark has been registered for some time for those other uses, including providing intercollegiate athletic exhibitions, printed awards, pencils, pens, prints, furniture, beverage containers, and coolers.[26]

But KU appears to go beyond asking for clarification by arguing that the goods and services covered by the two trademark registrations "are more than sufficiently related to Defendants' goods to serve as independent bases of liability."  The Court explained in detail in its Order that incontestability only means that a mark is presumed to be nondescriptive or to have acquired secondary meaning.[27]  Because the "Jayhawks" mark, as used on T-shirts, is not incontestible, it is not entitled to this presumption.[28]  "A registered mark is incontestable only in the form registered and for the goods or services claimed."[29]  As such, the Court concluded that it is a question of fact whether the "Jayhawks" mark, as used on T-shirts, had acquired secondary

---

[26](Doc. 110 at 7–8.)

[27]*Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 924 (10th Cir. 1986).

[28]*Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 669 (5th Cir. 2000); McCarthy § 19:48 ("the prima facie and incontestable provisions of the Lanham Act apply only to the goods or services specified in the registration"); § 32:152 ("incontestability is limited to use of the mark on the goods or services specified in the § 15 affidavit or the § 9 renewal.").

[29]*In re Save Venice New York, Inc.*, 259 F.3d 1346, 1353 (Fed. Cir. 2001).

meaning or became inherently distinctive.[30]  The Court found sufficient evidence to create a genuine issue of material fact on the issue and the Court will not disturb this finding upon reconsideration.

     **IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motion for Reconsideration (Doc. 231) is denied.

     **IT IS SO ORDERED**.

     Dated this 13th day of May 2008.

                     S/   Julie A. Robinson
                     Julie A. Robinson
                     United States District Judge

---

[30]*Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004).