ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNIVERSITY OF KANSAS and KANSAS ATHLETICS, INC.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 06-2341-JAR** |
| ) | |
| **LARRY SINKS, CLARK ORTH, and VICTORY SPORTSWEAR, L.L.C. (collectively d/b/a/ Joe-College.com),** ) | |
| ) | |
| **Defendants.** ) | |

## <u>AMENDED MEMORANDUM AND ORDER</u>

The Court now considers the parties' motions for judgment as a matter of law.  Plaintiffs moved for judgment pursuant to Fed. R. Civ. P. 50(a) at the close of all evidence and also renewed their summary judgment motions.  Plaintiffs also filed written motions: Motion for Judgment as a Matter of Law on the Secondary Meaning of the Crimson-and-Blue Color Scheme and the Inherent Distinctiveness of Plaintiffs' Word Marks (Doc. 323); and Plaintiffs' Motion for Judgment as a Matter of Law on Defendant Orth's Mere Printer Defense (Doc. 325).  Defendants orally moved for judgment as matter of law at the close of plaintiffs' case and renewed those motions at the conclusion of all evidence.  Specifically, defendants asked for judgment on the trademark dilution claims and on the infringement claims based on plaintiffs' failure to prove secondary meaning for certain allegedly infringing marks.

Subsequently, the jury returned a verdict in favor of plaintiffs on all claims.  The jury

further found all three defendants liable on each of the six claims.[1]  The Court has considered the parties' oral argument on the issues raised in their Rule 50(a) motions, as well as the submitted briefs.

Before the Court was able to rule on the issues raised in the Rule 50(a) motions, plaintiffs filed a renewed motion for judgment as a matter of law pursuant to Rule 50(b) (Doc. 345).[2]  In that motion, plaintiffs argue that the jury's verdict contradicts the evidence presented at trial and, in some cases, the jury made inconsistent findings.  Defendants have responded to this motion, so it is ripe for decision.  As explained more fully below, the Court denies the parties' pre-verdict motions.  The Court directs the clerk to enter final judgment on the verdict and denies plaintiffs' renewed motion for judgment as a matter of law.

## I.      Standard

Under Federal Rule of Civil Procedure 50(a), a court may grant judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."[3]  A moving party "is entitled to a judgment if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[4]  "The question is not whether there is literally no evidence supporting the nonmoving party but whether there is evidence upon which a jury could

---

[1]The jury made separate findings on the trademark infringement/unfair competition claims and the trademark dilution claims with regard to each of the 203 T-shirts at issue in the case.  (Doc. 332.)

[2]Judgment has not yet been entered in this matter; therefore, plaintiffs' renewed motion for judgment as a matter of law is timely.  *See* Fed. R. Civ. P. 50(b); *see also McCroy ex rel. McCroy v. Coastal Mart, Inc.*, 207 F. Supp. 2d 1265, 1268-70 (D. Kan.. 2002).

[3]Fed. R. Civ. P. 50(a)(1).

[4]*Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000) (quotations omitted).

properly find for that party."[5]  In order for a jury to properly find for a party, "more than a scintilla of evidence" must be presented to support a claim.[6]  When the moving party also carries the burden of proof, the motion "may be granted only where [the movant] has established his case by evidence that the jury would not be at liberty to disbelieve."[7]  "[T]he evidence is tested for overwhelming effect. . . .  A directed verdict for the party bearing the burden of proof may be granted only if the evidence is such that without weighing the credibility of the witnesses the only reasonable conclusion is in its favor."[8]

In considering a motion for judgment as a matter of law, the court reviews all of the evidence in the record and construes it in the light most favorable to the nonmoving party.[9]  But the court must refrain from making credibility determinations and weighing the evidence.[10]  "The jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact."[11]

## II.    Discussion

### A.    *Defendants' Motion on Actual Dilution*

---

[5]*Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 685 (10th Cir. 2007).

[6]*Id.* (citing *Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1278 (10th Cir. 2003)).

[7]*Black v. M&W Gear Co.*, 269 F.3d 1220, 1238–39 (10th Cir. 2001) (quotation omitted).

[8]*Hurd v. Am. Hoist & Derrick Co.* 734 F.2d 495, 499 (10th Cir. 1984).

[9]*Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000) (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *Deters*, 202 F.3d at 1268).

[10]*Id.*

[11]*See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000) (internal quotations and citation omitted).

3

Claims for federal trademark dilution are governed by the Trademark Dilution Revision Act ("TDRA") of 2006.[12]  The TDRA provides,

> The owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.[13]

Even though the recent amendments to the TDRA only require a showing of a likelihood of dilution, in order to recover monetary damages on this claim, plaintiffs must show actual dilution since the allegedly unlawful conduct began before October 6, 2006.[14]

Defendants ask for judgment as a matter of law on the issue of actual dilution because the only evidence presented by plaintiffs was testimony from Jim Marchiony, a KU employee, about being approached by anonymous KU fans complaining about the negative effect that defendants' T-shirts have on the University's reputation.  But plaintiffs correctly point out that there is sufficient evidence in the trial record that would allow the jury to properly find for plaintiffs on the issue of actual dilution.  In addition to Marchiony's testimony, there was evidence in the form of web blog entries in the *Lawrence Journal World* that show that certain people in the Lawrence community believed the T-shirts to be offensive.  Under the standard enunciated in Rule 50(a), this evidence was sufficient for the jury to find in favor of plaintiffs on the issue of

---

[12]Pub. L. No. 109-312, 12-0 Stat. 1730 (amending Pub. L. No. 104-98, 109 Stat. 985 (1995)), codified at 15 U.S.C. § 1125(c)(1).

[13]15 U.S.C. § 1125(c)(1).

[14]15 U.S.C. § 1125(c)(5).

actual dilution.[15]

###### B.    Protectablility

Defendants orally moved for judgment as a matter of law on the secondary meaning of plaintiffs' marks.  According to defendants, there was no evidence presented about when certain marks acquired secondary meaning, so there is no way to tell if it was established prior to defendants' use of the marks.  Plaintiffs also moved for judgment on the secondary meaning of the crimson and blue color scheme and the inherent distinctiveness of their word marks.

The Court has already found that the marks "KU," "Kansas," and the Jayhawk design marks are incontestable under 15 U.S.C. § 1065, and are therefore protectable as a matter of law.[16]  "Jayhawks," "Allen Fieldhouse," and "The Phog" are registered trademarks, but are still contestable because they have not been in continuous use for five years since registration.  For these contestable marks, a rebuttable presumption of validity applies.[17]  The presumption can be overcome by defendants, if they are able to show by a  preponderance of the evidence that information in the registration is not true.[18]

The Lanham Act protects both registered and unregistered trademarks.[19]  "[T]he general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part

---

[15]The parties are reminded that they jury answered "Yes" to Question 7 on the verdict form: "Do you find actual confusion with regard to the trademark infringement and unfair competition claims and/or do you find actual dilution with regard to the dilution claims?"  (Doc. 332.)

[16](Doc. 228 at 29.)

[17]15 U.S.C. § 1057(b).  In discussing the "Jayhawks" mark, the Court only refers to the mark registered for use on apparel.  *See* Trial Ex. 440.

[18]*See Educ. Dev. Corp. v. Econ. Co.*, 562 F.2d 26, 28 (10th Cir. 1977).

[19]*See* 15 U.S.C. §§ 1114, 1125(a).

applicable in determining whether an unregistered mark is entitled to protection under § 43(a)."[20]

"'A mark must be capable of distinguishing the products [or services] it marks from those of others.'"[21] A mark can be distinctive because it is "inherently distinctive" or because it has developed secondary meaning, which happens when "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself."[22] There are five categories of marks with respect to protection: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful.[23]  The Tenth Circuit has explained:

> The trademark protection afforded each type of mark is related to how closely the mark identifies the source of the product.  "Because a generic mark refers to a general class of goods, it does not indicate the particular source of an item. Consequently, such a mark receives no legal protection and may not be registered alone as a trademark." 711 F.2d at 939.  At the other end of the spectrum, suggestive and fanciful marks may be registered without proof that they identify the source of the product.  *Id.*  Descriptive terms fall in the middle on the continuum.  "Because a descriptive term is one which a competitor would likely need to use in describing his product, the term does not indicate that a product comes from a single source. Therefore, a trademark that is descriptive may be registered only if it has acquired a secondary meaning by becoming 'distinctive of the applicant's goods in commerce.'"  *Id.* at 939–40.[24]

Colors can never be inherently distinctive; they are only protectable if they have acquired

---

[20]*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68 (1992).

[21]*Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004) (quoting *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999)).

[22]*Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000) (internal quotation omitted).

[23]*See id.*; *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 923 (10th Cir. 1986).

[24]*Beer Nuts, Inc.*, 805 F.2d at 924.

6

secondary meaning.[25]   The categorization of the remaining unregistered marks is a factual

question.[26]   The factfinder is "to determine, based on the evidence before it, what the perception

of the purchasing public is."[27]

### 1.       Defendants' Rule 50(a) Motion

Defendants argue that there can be no trademark infringement unless plaintiffs prove that

they possessed secondary meaning in their marks at the time defendants began using the marks.[28]

In order to defeat defendants' motion, plaintiffs must simply point to evidence in the trial record

that could persuade a reasonable jury to find for plaintiffs.  Defendants argue that there was no

evidence about when the following marks acquired secondary meaning, if at all: all variations of

the "Phog" mark, "Fighting Manginos," "Rock Chalk Jayhawk," "Kivisto Field," "Allen

Fieldhouse," and the "Jayhawk Football," "Jayhawk Basketball," and "Jayhawk Baseball"

marks.[29]   Despite initially arguing that there was "no" evidence about when plaintiffs began using

these marks, defendants argued that the testimony of Paul Vander Tuig about the length of time

these marks have been used by plaintiffs is not enough to satisfy their burden of proof.  The Court

disagrees.  The Court is not to weigh the credibility of witnesses when deciding a motion under

Rule 50; instead, it is to consider defendants' motion in the light most favorable to plaintiffs.

---

[25]*Wal-Mart Stores, Inc.*, 529 U.S. at 211; *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 162–63 (1995).

[26]*Donchez*, 392 F.3d at 1216.

[27]*Id.*

[28]*See* 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 16:34 (4th ed. 2008) (collecting cases).

[29]Defendants also argued that they are entitled to judgment on any use of the marks "Regents Center" and "Edwards Campus."  As plaintiffs concede, no such claims exist and these marks are not at issue.

Furthermore, plaintiffs were not necessarily required to establish secondary meaning for all of their marks—only for the marks that are categorized as descriptive or that are not otherwise inherently distinctive.

Vander Tuig testified that "the Phog" has been used in media guides, as well as on the banner that has hung prominently in Allen Fieldhouse since 1988. He further testified that it has been used on licensed apparel since at least the early 1990s when he began working at KU. Vander Tuig also testified about "Rock Chalk Jayhawk."[30] He explained that the phrase was first used by students in the 1880s and has been used for years at KU events as well as on licensed KU products since at least as early as he has worked for KU. These are all marks that are federally registered, so they are already afforded a presumption of validity and defendants point to no evidence that would rebut that presumption. But even if they are not deemed inherently distinctive, Vander Tuig's testimony is sufficient for a reasonable jury to have found secondary meaning.

With regard to "Kivisto Field," Vander Tuig testified that Tom and Julie Kivisto donated the money to upgrade the football field at Memorial Stadium and so KU decided to name the field after the Kivistos. Vander Tuig testified that KU conducted a naming ceremony for the football field in 2006 and pointed to evidence showing that the Kivistos consented to KU's use of their name as a trademark on apparel. This evidence was sufficient for the jury to find that Kivisto Field was either inherently distinctive or acquired secondary meaning before defendants began using the mark. Likewise, defendants urge that there was no evidence that "Allen Fieldhouse" acquired secondary meaning prior to the state registration of that mark. Vander Tuig testified

---

[30](*See* Pl. Trial Ex. 73.)

extensively about the history of the fieldhouse—it is over fifty years old—and how it was named after Phog Allen, the longstanding basketball coach.

As to the "Fighting Manginos" mark, there was one blue T-shirt presented to the jury for decision that involved that mark.[31]  There was evidence that Mark Mangino is the KU football coach and evidence about the crimson and blue color scheme as it relates to KU.  The Court finds that these words, when used on a blue T-shirt, at a minimum could be found to be descriptive and to have acquired secondary meaning.  The mark makes a descriptive use of Mark Mangino's name to indicate the KU football team and uses the KU school colors to convey that message. Finally, Vander Tuig testified about the state law registrations for the marks "Jayhawk Basketball," "Jayhawk Football," and "Jayhawk Baseball," which were all filed in January 2006. Defendants are unable to point to any legal authority for the proposition that the state registrations must have predated defendants' use in order to be protected under Kansas law.[32]  Moreover, there was ample evidence presented through both Vander Tuig's and Marchiony's testimony, that the "Jayhawk" mark is protectable.  Accordingly, judgment as a matter of law is not appropriate and defendants' motion is denied in its entirety.

### 2.    Plaintiffs' Rule 50(a) Motion

Plaintiffs argue for judgment as a matter of law on the secondary meaning of the crimson and blue color scheme and on the inherent distinctiveness of certain word marks.  In deciding this

---

[31](Ex. 209.)  Plaintiffs position on its use of this mark has been inconsistent.  During oral argument on defendants' motion, plaintiffs stated that they did not claim that the "Fighting Manginos" word marks alone were protectable.  Instead, plaintiffs argued that the T-shirt at issue with that language is infringing because the words appear with the crimson and blue colors and are likely to cause confusion in the marketplace.   In their own Rule 50(a) motion, plaintiffs argue that the "Fighting Manginos" word mark is protectable as a matter of law because it is arbitrary, and thus, inherently distinctive.  (Doc. 324 at 10.)

[32]*See* K.S.A. § 81-213.

motion, the Court must apply the heightened standard of proof that applies to movants who also bear the burden of proof at trial.  Plaintiffs first urge that they presented overwhelming evidence that the crimson and blue color scheme acquired secondary meaning prior to January 2006. Further, plaintiffs argue that they are entitled to judgment on the protectability of their word marks because they are arbitrary and thus, inherently distinctive.

To determine whether a mark has acquired secondary meaning, proof of the following factors is relevant: (1) consumer testimony or surveys; (2) advertising; (3) unsolicited media coverage; (4) exclusivity and length of use; (5) sales success; and (6) intentional copying.[33] Plaintiffs first discuss the length and manner of use, pointing to Marchiony's and Vander Tuig's testimony that the crimson and blue color scheme has been a key part of the KU experience since at least the 1890s.  Plaintiffs also produced evidence that KU has prominently displayed these colors in University materials such as media guides, recruiting materials, orientation guides, catalogs, alumni publications, and athletic uniforms for decades.[34]  Next, plaintiffs point to evidence of the history of successful sales of items bearing the crimson and blue color scheme since at least 1993, resulting in millions of dollars worth of sales.[35]  Plaintiffs also cite unsolicited media coverage—media references that include the color scheme and Marchiony's testimony about the frequent broadcasts of KU basketball games.  Finally, plaintiffs refer the Court to evidence that defendants intentionally copied the color scheme.  Specifically, defendant Orth

---

[33]*W. Chem. Pumps, Inc. v. Superior Mfg., Inc.*, 989 F. Supp. 1112, 1120 (D. Kan. 1997).

[34](*See* Trial Ex. 113.)

[35](*See* Trial Exs. 114, 446.)

testified that Sinks ordered blue shirts for his T-shirt designs because it is one of KU's colors.[36]
Defendant Sinks also testified that he selected royal blue shirts in order to appeal to KU fans and
that the T-shirts that read "Go Big Blue" are intended to reference KU's color blue.[37]

        While plaintiffs are correct that all of this evidence supports a finding of secondary
meaning of the crimson and blue color scheme, the Court must find that this evidence, without
weighing the credibility of the witnesses, is so overwhelming that the jury could have reached no
other conclusion.  The Court is unable to find that plaintiffs meet this heightened burden.  And
even if the Court agrees with plaintiffs that the evidence is so one-sided on this issue that the jury
could have reached no other decision but that plaintiffs had established secondary meaning in the
KU color scheme such that it was protectable under trademark laws, such a finding alone has no
bearing on the jury's verdict—plaintiffs were required to show that the protectable marks were
likely to cause confusion in the marketplace.  It is just as likely that the jury's verdict was based
on the likelihood of confusion analysis.

        Plaintiffs also ask for judgment as a matter of law on the inherent distinctiveness of its
word marks "Jayhawks," "Rock Chalk Jayhawk," "Rock Chalk," "Jayhawk Baseball," "Jayhawk
Basketball," "Jayhawk Football," "Fighting Manginos," "Kivisto Field," "Allen Fieldhouse,"
"The Phog," "Late Night in the Phog," and "Beware of the Phog."   Plaintiffs assert that the
evidence shows that the marks are necessarily arbitrary, and thus, inherently distinctive.  The
word marks "Jayhawks," "Rock Chalk Jayhawk," "Allen Fieldhouse," and "The Phog" are
registered with the United States Patent and Trademark Office.  These marks are entitled to a

---

[36](Doc. 324 at 8, quoting Orth Trial Tr. at 63–64.)

[37](Doc. 335 at 123–24.)

rebuttable presumption of validity.  Further, the marks that are registered with the State of Kansas qualify for protection under the Kansas statute.  Even if the Court found that this evidence is conclusive on the issue of protectability, it has no impact on the likelihood of confusion analysis.  Therefore, plaintiffs' motion for judgment is denied.

### C.    Plaintiffs' Rule 50(a) Motion on the Mere Printer Defense

Plaintiffs filed a motion for judgment under Rule 50(a) on the mere printer defense as it pertains to defendant Orth.  The Court finds that plaintiffs' motion pertaining to defendant Orth is moot—the jury was instructed on the mere printer defense and obviously rejected it, at least with regard to the T-shirts that it found were subject to liability.

### D.    Plaintiffs' Rule 50(b) Motion

Plaintiffs renewed their motion for judgment as a matter of law on: (1) defendants' T-shirts bearing the "Kansas" mark, including those that had already been deemed to infringe KU's "Kansas" mark by this Court at summary judgment; (2) defendants' T-shirts bearing the terms "Hawk" or "Hawks" which Mr. Sinks testified were intentionally used to refer to plaintiffs' "Jayhawks" mark; and (3) defendants' T-shirts bearing KU's Crimson-and-Blue Color Scheme.  The Court addresses each in turn and again applies the heightened standard of proof that applies when the movant also carries the burden of proof.

### 1.    "Kansas" T-shirts

In its March 19, 2008 Memorandum and Order, this Court granted plaintiffs' motion for summary judgment on four specific shirts containing plaintiffs' marks.[38]  Despite this ruling,

---

[38]Specifically, the Court granted summary judgment on the shirts presented in Doc. 144, Ex. A at 1-3, 85.  The only two T-shirts that the Court specifically granted summary judgment for but that the jury found noninfringing are pictured in Trial Exhibits 78 and 126 (Doc. 332 at 6, 7.)  One T-shirt is red and the other is blue; both are one-sided T-shirts that have the "Kansas" mark across the front.  In its summary judgment order, the Court stated: "in

plaintiffs opted to present these shirts to the jury for consideration, "so that the jury could consider these shirts in determining Defendants' willful intent and damages."  But rather than present them for this limited purpose, the parties jointly submitted a verdict form that included these shirts and requested the jury to determine whether they were "infringing," and/or "diluting," or "neither."  Defendants urge that it was plaintiffs' choice to submit these shirts to the jury and that, instead, they should have asked the Court to instruct the jury that the shirts had already been determined to be infringing and that they should only consider them for the limited purpose of assessing intent and damages.[39]  Defendants reason that plaintiffs invited the jury to reconsider the Court's previous ruling and should be bound by the jury's determination.

The Court granted summary judgment on these T-shirt designs and defendants did not seek reconsideration of that decision.  Still, only final judgments qualify as law of the case.[40]  The Court found that the "Kansas" mark was protectable as a matter of law because it is incontestable. Further, the Court found that those T-shirts displayed marks that are overwhelmingly similar to

---

their statement of uncontroverted facts, plaintiffs refer to these as 'examples.'  While the Court is unable to locate other instances like these in its cursory review of the exhibits, its findings with regard to these shirts apply to any other shirts that similarly include KU's marks without any other differentiating marks or additional non-infringing language.  It is incumbent upon plaintiffs to identify any such additional shirt designs."  In their renewed motion, plaintiffs identify three other T-shirts that were included on the verdict form: Trial Exhibits 77, 125, and 416 at 78 (Doc. 332 at 6, 93).  The Court agrees that these shirts are included in the Court's summary judgment ruling for plaintiffs.

[39]The Court notes that defendants alone proposed that the jury render a decision on each of the 203 T-shirts at issue.  However, defendants failed to submit a workable proposed verdict form to the Court.  Instead, after trial had already commenced, the parties and the Court relied upon plaintiffs to generate a verdict form with pictorial representations of the T-shirts for decision since they alone had the electronic capability to do so.  The Court surmises that the five "Kansas" T-shirts that had been ruled on at summary judgment were included inadvertently during this hurried process.

[40]*Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1079 (10th Cir. 2001); *In re Unioil, Inc.*, 962 F.2d 988, 993 (10th Cir. 1992); *see* Fed. R. Civ. P. 54(b) ("any order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

KU's marks and that the striking similarities trigger a presumption that defendants intended to infringe; in fact, the Court found that "all of them are highly similar to officially licensed products when comparing their overall look, sound, and meaning."  Those two factors weighed so heavily in favor of a likelihood of confusion that the Court held on summary judgment that no reasonable jury could find otherwise.  Defendants argue that "the trial record contains evidence not available on summary judgment from which the jury might have properly concluded that the Original 'Kansas' Shirts were not infringing," pointing to certain evidence that they argue suggests "Kansas" is a weak mark.  Specifically, defendants urge the Court to consider Vander Tuig's testimony about the "Kansas" mark that not all uses of the mark on T-shirts are infringing and that it would depend upon the context of the mark whether "Kansas" referred to KU or to the State of Kansas.  Furthermore, defendants urge that the jury was presented with various third-party uses of the "Kansas" mark.  Thus, the jury could have found that "Kansas" is a relatively weak mark, outweighing relative similarities between the marks.

The Court declines to change its summary judgment ruling that the five one-sided "Kansas" shirts are infringing as a matter of law.  Defendants made similar arguments about the strength of the "Kansas" mark on summary judgment and the Court explicitly found that the similarities between the defendants' one-sided "Kansas" shirts and officially licensed T-shirts are overwhelming.  Further, the Court found that "[t]he high degree of similarity weighs strongly in favor of a finding of intent; the use of almost identical marks supports a conclusion that defendants intended to derive a benefit from KU's reputation, rather than rely upon their own."[41]

---

[41](Doc. 228 at 40.)  In *Smack Apparel Co. v. Board of Supervisors for La. State Univ. Ag. & Mech. Coll.*, the Fifth Circuit affirmed the district court's grant of summary judgment for plaintiffs based primarily on the "overwhelming similarity of the marks and the defendant's intent to profit from the Universities' reputation." –F.3d–, No. 07-30580, 2008 WL 4981326, slip op. at 24 (5th Cir. Nov. 25, 2008).  In reaching this decision, the Fifth Circuit considered each of the six T-shirts alleged to be infringing and compared them to officially licensed

To the extent plaintiffs renew their motion for reconsideration of the Court's denial of summary judgment on the two-sided T-shirts containing the "Kansas" mark, the motion is denied. For the same reasons discussed at length in its Order denying motion for reconsideration, the Court finds that a reasonable jury could find no likelihood of confusion with regard to defendants' use of the "Kansas" mark when non-infringing language appears on the back of the T-shirt. A reasonable jury could conclude that such language is dissimilar on the levels of sight, sound, and meaning and that this weighs against a finding of likelihood of confusion and does not create a presumption of intent to infringe. Plaintiffs are unable to meet their heavy burden on a Rule 50 motion, as the moving party who also bears the burden of proof at trial, that the only reasonable conclusion the jury could reach is that these shirts are infringing.

Plaintiffs further contend that judgment is appropriate because the jury's decisions on certain T-shirts are inconsistent. The Court disagrees with plaintiffs that there was "overwhelming evidence" presented at trial that could lead to no other conclusion but that all or none of these T-shirts are infringing. The jury determined that the "Kansas Swim Team" T-Shirt[42] was infringing while the "Kansas Drinking Team"[43] and ""Kansas Co-Ed Naked Beer Pong"[44] shirts were not. Defendants made a myriad of distinctions between KU's use of the "Kansas" mark on apparel and defendants' use of the mark on T-shirts and urged the jury to consider each T-shirt separately. Given the plethora of factors that the jury could consider when determining whether a likelihood of confusion existed—an inquiry that was conducted separately

---

products by the plaintiff Universities. *Id.* at 17–19.

[42](Pl. Trial Ex. 182.)

[43](Pl. Trial Ex. 183.)

[44](Pl. Trial Ex. 189.)

for each alleged infringing use—this Court is not in a position to conclude that the evidence, when tested for overwhelming effect, could only support a verdict in plaintiffs' favor.[45]

### 2.   "Hawk" and "Hawks" T-Shirts

Plaintiffs urge that judgment on the infringement and dilution claims should be entered in their favor on the T-shirts displaying the words "Hawk" or "Hawks." Plaintiffs argue that defendants' trial testimony that they intentionally used "Hawk" or "Hawks" in order to reference KU created a presumption of infringement that defendants failed to rebut. Also, plaintiffs again point to alleged inconsistencies within the jury's verdict since the jury determined that some T-shirts containing these terms were infringing and diluting, while others were not.

Plaintiffs first contend that "Hawk(s)" is undisputedly short for plaintiffs' "Jayhawk(s)" mark, pointing to defendants' trial testimony where they admitted as much. Plaintiffs refer to defendant Sinks' testimony where he admits that his use of the phrase "Hawk Football" was to reference the University of Kansas.[46] Sinks also testified that he intended to appeal to KU fans by placing "Hawk Basketball" on a blue shirt since blue is one of KU's school colors. In fact, Sinks testified "I used the word 'Hawk' to reference it, yes. But it does not include any of their trademarks." Later, plaintiffs' counsel asked, "Did there come a time you intentionally used that language because you recognized it as short for 'Jayhawk Basketball'?" Sinks responded, "No. I

---

[45]*See, e.g.*, *Sally Beauty Supply Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002) (citations omitted) (explaining that the likelihood of confusion factors are nonexhaustive and that no one factor is dispositive). Without concluding one way or another what the jury relied upon in distinguishing these shirts, the Court notes that one obvious distinction between these shirts is the presence of the JoeCollege.com logo on the two shirts that the jury found to be noninfringing and lack of that logo on the "Kansas Swim Team" shirt that it found was infringing. Also, the "Kansas Swim Team" shirt involved a sexual reference, while the other shirts were drinking references. Finally, the "Kansas Swim Team" T-shirt references a real team, (Doc. 353 at 48), while the other two describe fictional, nonexistent teams. *See Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 852 (10th Cir. 2000) (explaining that when evaluating whether the jury verdict is inconsistent, the Court must "accept any reasonable view of the case that makes the jury's answers consistent.").

[46]*See* Doc. 335 at 125.

designed it just to specifically reference 'Hawk Basketball,' which was a reference to the University of Kansas Basketball."[47]  The Court finds that this testimony falls short of conclusive evidence of an intent to infringe on the "Jayhawk" mark such that judgment is appropriate with regard to those T-shirts.  While plaintiffs are correct that it is evidence of intent, the jury could have just as reasonably concluded that defendants used the term "Hawk(s)" to specifically avoid infringing on the "Jayhawk" mark.

Next, plaintiffs appear to argue that Instruction No. 31 was given in error.  It stated:

> A potential infringer cannot avoid confusion simply by adding a word or phrase to the mark.  Thus, you may still find a likelihood of confusion even if defendants have added words, phrases, or a logo to their T-shirts.
> Furthermore, for purposes of the likelihood of confusion analysis, you may not shorten a trademark when evaluating the similarity of the marks.[48]

In fact, plaintiffs did not object to this instruction.[49]  In their Rule 50(b) motion, plaintiffs state that the instruction "may have confused the jury into believing that a shortened version of a trademark cannot cause confusion."  Of course, the instruction does not state that the jury may not find infringement when the mark is shortened; it merely instructs that for the similarity of the marks factor, the jury may not shorten a trademark.

Aside from Mr. Tilley's closing argument, plaintiffs point to no evidence showing that the

---

[47]*Id.* at 126.

[48](Doc. 330, No. 31.)

[49](Doc. 358 at 6) ("I wouldn't object to a properly-worded sentence that follows that basically leaves it up to the jury in the sense that it says shortening a trademark of the plaintiff doesn't necessarily constitute infringement. Or something to that effect.  Or it says that you take that into consideration."); *see also id.* at 7 (plaintiffs' counsel agreeing to the Court's proposed language).

jury misunderstood this instruction.[50]  Given the presumption that a jury follows a trial court's instructions,[51] the Court finds that Instruction No. 31 was sufficient to cure any error arising out of Mr. Tilley's closing argument that shortening the trademark cannot result in trademark infringement.[52]

Plaintiffs are left to rely upon alleged inconsistencies in the T-shirts that the jury found infringing or diluting, but fail to explain how these alleged inconsistencies are evidence that the jury failed to follow the Court's instruction.  Again, plaintiffs suggest that the only reasonable verdict was for the jury to find all or none of the "Hawk(s)" T-shirts to be infringing.  Of course, each of the T-shirts that plaintiffs highlight in their brief are different.  The only "Hawk(s)" T-shirts that the jury found to be infringing include other marks that plaintiffs alleged were infringed upon.[53]  Again, the jury was properly instructed to consider a whole host of factors in reaching separate verdicts for each T-shirt at issue.  The Court is unable to determine that the jury's conclusions are inconsistent given that they made separate determinations for each T-shirt, in line with the Court's instructions.  It is reasonable for the jury to have determined that defendants' use of "Hawk(s)" was not infringing unless it was used in conjunction with certain other marks affiliated with KU; therefore, the Court is unable to find the verdict to be

---

[50]"And even though Mr. Henn made every effort to get Mr. Sinks to admit that it's shorthand for 'Jayhawk,' that simply is not a relevant issue for purposes of your determination whether or not there's any confusion in this case.'" (Doc. 344 at 13.)

[51]*Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Battenfield v. Gibson*, 236 F.3d 1215, 1225 (10th Cir. 2001).

[52]The Court does not make a finding with regard to the propriety of Mr. Tilley's statement but notes that just before making this statement, he discussed how the jury is not to shorten a trademark when evaluating the similarity of the marks factor in its likelihood of confusion analysis.  (Doc. 344 at 13.)

[53]*See, e.g.*, Ex. 243 (including "Phog" mark); Ex. 263 (including "Kivisto Field" mark); and Ex. 285 (including "Kansas" mark).

inconsistent.[54]

### 3.   Crimson-and-Blue Color Scheme

Plaintiffs argue in their Rule 50(b) motion that under the "doctrine of legal equivalents,"[55] the crimson-and-blue color scheme must be deemed infringing because the jury found that defendants' use of the words "crimson and blue" were infringing.  The Court does not find support for the proposition that this doctrine dictates a finding by the jury that both the crimson-and-blue color scheme and the words "crimson and blue" are equivalent as a matter of law.[56] Moreover, the jury was required, as a matter of law, to evaluate the similarity of the marks "in the context of the marks as a whole as they are encountered by consumers in the marketplace."[57]  The jury could have easily determined that the words "crimson and blue," in the context in which they appeared, created a likelihood of confusion, while T-shirts that did not otherwise cause a likelihood of confusion failed to become infringing solely because the non-infringing words appeared on a crimson or blue T-shirt.

Finally, plaintiffs argue that defendants' testimony proves intent to copy the plaintiffs' color marks and thus, a presumption of infringement applies.  While "deliberate adoption of a

---

[54]*See Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 852 (10th Cir. 2000) (explaining that when evaluating whether the jury verdict is inconsistent, the Court must "accept any reasonable view of the case that makes the jury's answers consistent.").

[55]This is also referred to as the "doctrine of picture-word equivalency," which states that when "a picture mark and a word mark that describes the picture (such as a picture of a moose and the word 'moose'), may leave customers with a similar mental impression, a fact finder could determine that the two types of marks are confusingly similar."  *Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1228–29 (C.D. Cal. 2004), *aff'd*, 114 Fed. App'x 921 (9th Cir. 2004).  The Court notes that plaintiffs did not request an instruction on this issue.

[56]*Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 257 (2d Cir. 1987) ("we agree that words and pictorial representations should not be equated as a matter of law, a district court may make such a determination as a factual matter.").

[57]*King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1090 (10th Cir. 1999) (quoting *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 925 (10th Cir. 1986)).

19

similar mark may lead to an inference of intent to pass off goods as those of another which in turn supports a finding of likelihood of confusion,"[58] "mere knowledge should not foreclose further inquiry."[59]  But, unlike at the summary judgment stage, the evidence must be so one-sided that the only reasonable conclusion, without weighing the credibility of the witnesses, is in plaintiffs' favor.  While there is certainly evidence in the form of Sinks' and Orth's testimony that they printed their T-shirt designs on blue T-shirts in order to appeal to KU fans and reference KU, the jury could also reasonably conclude that this testimony only supports the conclusion that Sinks and Orth merely had knowledge of KU's marks.  Moreover, the jury could have reasonably weighed other likelihood of confusion factors more heavily than the intent factor.[60]  Accordingly, the Court is unable to conclude that the only reasonable verdict is that defendants infringed on the crimson-and-blue color scheme with regard to each of defendants' T-shirts that use these colors.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motion for Judgment as a Matter of Law on Defendant Orth's Mere Printer Defense (Doc. 325) is **denied as moot**; plaintiffs' Motion for Judgment as a Matter of Law on the Secondary Meaning of the Crimson-and-Blue Color Scheme and the Inherent Distinctiveness of Plaintiffs' Word Marks (Doc. 323) is **denied**; defendants' oral Motion for Judgment as a Matter of Law is **denied**; and plaintiffs' Motion for Renewed Judgment as a Matter of Law (Doc. 345) is **granted in part and denied in part**.  The Court directs the clerk to enter judgment on the verdict except with regard

---

[58]*Universal Money Ctrs., Inc. v. AT&T*, 22 F.3d 1527, 1531 (10th Cir. 1994).

[59]*GTE Corp. v. Williams*, 904 F.2d 536, 541 (10th Cir. 1990).

[60]*See Smack Apparel Co. v. Board of Supervisors for La. State Univ. Ag. & Mech. Coll.*, –F.3d–, 2008 WL 4981326, slip op at 22 (5th Cir. Nov. 25, 2008) ("Smack's admitted intent *and* the similarity in appearance between Smack's shirts and the Universities' licensed products is strong evidence of a likelihood of confusion." (emphasis added)).  The Court notes that *Smack* involved only six T-shirts, all of which bore strong similarities to specific licensed apparel.  *See id.* at 17–19.  Furthermore, the Fifth Circuit was reviewing under a summary judgment standard, not the heightened standard applicable here.  *See id.* at 7–8.

to the following T-Shirts on pages 6, 7, and 93 of the Verdict Form: Exhibits 77, 78, 125, 126,

and 416 at pp. 78.  As to those T-Shirts, judgment is entered for plaintiffs; defendants are

prohibited from the sale of those T-shirts in accordance with the Court's July 21, 2008 Order

(Doc. 333).

      **IT IS SO ORDERED**.

      Dated this 1st day of December, 2008.

       S/ Julie A. Robinson
      Julie A. Robinson
      United States District Judge