ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNIVERSITY OF KANSAS and KANSAS )
ATHLETICS, INC., )
                               )
         Plaintiffs, )
                               )
vs. )     Case No. 06-2341-JAR
                               )
LARRY SINKS, CLARK ORTH, and )
VICTORY SPORTSWEAR, L.L.C. )
(collectively d/b/a/ Joe-College.com), )
                               )
         Defendants. )
_____ )

## MEMORANDUM AND ORDER

Before the Court is plaintiffs' Motion for Attorneys' Fees and Expenses (Doc. 372). The motion is now fully briefed, both on the issue of entitlement to fees and on the amount of reasonable fees. As explained more fully below, the Court grants plaintiffs' motion for attorneys' fees and awards fees and expenses in the amount of $667,507.42.

## I.     Background

Plaintiffs initiated this trademark infringement and dilution case on August 16, 2006, alleging federal claims for trademark infringement, unfair competition, and dilution and Kansas law claims of trademark infringement and dilution. These claims all stem from defendants' manufacture and sale of over 200 T-shirt designs that plaintiffs alleged either infringe or dilute their trademarks. Defendants filed counterclaims against plaintiffs for conversion, tortious interference and under 42 U.S.C. § 1983, that were later voluntarily dismissed.

On March 19, 2008, the Court entered a Memorandum and Order granting in part and denying in part plaintiffs' motion for summary judgment (Doc. 228). In that Order, the Court

granted summary judgment to plaintiffs on the trademark infringement claims with regard to T-shirt designs that include KU's marks without any other differentiating marks or additional non-infringing language and on defendants' affirmative defenses.[1]  The Court denied both sides' motions for summary judgment with regard to defendants' remaining T-shirt designs as it was unable to find, as a matter of law, that the likelihood of confusion factors considered as a whole, favored either party.

The case proceeded to trial and the jury returned a verdict in favor of plaintiffs on all claims.  The jury further found all three defendants liable on each of the six claims.[2]  The jury made separate findings on the trademark infringement/unfair competition claims and the trademark dilution claims with regard to each of the 206 T-shirts submitted to it for decision.  The jury found fifty-three T-shirt designs either infringing, diluting, or both.  In the section of the Verdict Form on Monetary Recovery, the jury answered "Yes" to the following question: "Do you find that defendants acted willfully or in bad faith with regard to any of the claims (i.e., Question Nos. 1-6 above) for which you answered "Yes"?  The jury found all three defendants acted willfully or in bad faith and awarded plaintiffs profits in the amount of $119,087.50.  The jury did not find that plaintiffs were entitled to punitive damages under state law.

## II.   Discussion

### A.   Entitlement to Fees

Under the Lanham Act, a district court may exercise its discretion and award attorneys'

---

[1](Doc. 228 at 34 n.89.)

[2](Doc. 332.)

fees to a prevailing party only in "exceptional cases."[3]  The Tenth Circuit has held that an exceptional case "is one in which the trademark infringement is malicious, fraudulent, deliberate, or willful."[4]  "[E]ven in exceptional cases, the decision to award attorneys' fees is vested in the discretion of the district court."[5]

It cannot be disputed that plaintiffs' favorable verdict renders them prevailing parties under the statute, despite the fact that they did not prevail on every single allegedly infringing or diluting T-shirt design.[6]  They were awarded both money damages and a permanent injunction. Therefore, the Court proceeds to its next inquiry—whether this is an exceptional case.

The parties dispute whether the jury verdict, explicitly finding that defendants' conduct was willful, dictates the conclusion that this case is "exceptional."  Plaintiffs maintain that the jury's willfulness finding is sufficient to render this case exceptional.  Defendants argue that the verdict was based on all the claims and did not apply the proper quantum of proof of clear and convincing evidence.  Defendants also renew their contention that the jury's verdict is inconsistent, which they claim makes a finding of willfulness with regard to all of the T-shirt designs problematic.  The Court rejects this last argument for the same reasons enunciated in

---

[3]15 U.S.C. § 1117(a).

[4]*W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1273 (10th Cir. 2005); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000); *VIP Foods, Inc. v. Vulcan Pet, Inc.*, 675 F.2d 1106, 1107 (10th Cir.1982) (citing S. Rep. No. 93-1400, 93rd Cong., 2d Sess., *reprinted in* (1974) U.S. Code Cong. & Ad. News 7132, 7133).

[5]*Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1146 (10th Cir. 2000).

[6]*See Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006); *Post Office v. Portec, Inc.*, 913 F.2d 802, 812 (10th Cir. 1990) ("We hold that a finding of actual damage, regardless of the amount awarded, is sufficient to fulfill the Lanham Act's prevailing party requirement and thus is sufficient to support an award of attorneys fees . . . ."), *vacated on other grounds*, 499 U.S. 915 (1991).

rejecting this claim when it was made in the post-trial motions.[7]

The Court is also not persuaded that plaintiffs must show that the case is exceptional by clear and convincing evidence.  Defendants point the Court to no authority from the Tenth Circuit that imposes this burden of proof; all of the cited-to authority is from outside this Circuit.[8]  The Court has likewise been unable to locate a Tenth Circuit case that requires the plaintiff to show willfulness by clear and convincing evidence.[9]

The Tenth Circuit has previously found that a jury's finding that the defendant's actions were willful and intentional, coupled with the district court's finding that the defendant's actions were willful and intentional, is sufficient to fit within its construction of the term "exceptional" under the Lanham Act.[10]  Here, the jury explicitly found that the defendants acted willfully on the verdict form.  Moreover, the Court finds ample evidence in the record that defendants acted willfully on the trademark infringement and unfair competition claims.  Plaintiffs' counsel elicited testimony from defendants Sinks and Orth that they used the KU marks on infringing T-shirt designs with the intent to appeal to KU fans.[11]  Sinks repeatedly testified that he chose to design the T-shirts with the various KU Marks in order to refer to KU and to appeal to KU fans.

---

[7]As the Court has previously noted, the specific example provided by defendants—"Kansas Drinking Team," "Kansas Co-Ed Naked Beer Pong," were found not infringing while "Kansas Swim Team" was found to be infringing—is easily reconcilable.  KU actually has a swimming team, while it presumably does not actually have a drinking team, nor a naked beer pong team.

[8]*See, e.g.*, *Bd. of Supervisors for La. St. Univ. v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir. 2008) (citing *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 490 (5th Cir. 2004)).

[9]*W. Diversified Servs., Inc.*, 427 F.3d at 1273 (10th Cir. 2005) ("if Western raises a genuine factual issue with regard to willful infringement, it should survive summary judgment not only on the award-of-profits-claim, but also on the request for attorneys' fees."); *United Phosphorus, Ltd.*, 205 F.3d at 1232; *VIP Foods, Inc. v. Vulcan Pet, Inc.*, 675 F.2d 1106, 1107 (10th Cir.1982)

[10]*Post Office v. Portec, Inc.*, 913 F.2d 802, 811 -814 (10th Cir. 1990), *vacated on other grounds*, 499 U.S. 915 (1991).

[11]*See, e.g.*, Doc. 335 at 123, 124.

He also testified that he chose to print the T-shirt designs with the crimson and blue color scheme for the same reason.[12]  He testified that he designed T-shirts with the "Hawks" marks in order to draw into his store KU fans.  "Usually, parties show defendant's intent to confuse consumers by producing evidence that the defendant tried to 'pass off [his] product as that of another.'"[13]  The Court finds that defendants' own testimony sufficiently established that they intended to pass certain of their products off as KU merchandise.

The evidence at trial also showed that defendant Sinks previously was licensed to sell merchandise bearing the KU marks when he was affiliated with Midwest Graphics.  Sinks had applied for a license from KU for his Joe-College merchandise and was rejected.  This evidence established that Sinks was well-aware that he was required to be licensed in order to sell T-shirts utilizing the KU marks; yet, when his license application was denied, he manufactured the shirts anyway.  The Court finds that all of this evidence, under either a clear and convincing evidence or preponderance of the evidence standard, shows that defendants' trademark infringement was willful and deliberate.  Accordingly, the case is "exceptional" under the Lanham Act and plaintiffs are entitled to reasonable attorneys' fees.[14]

### B.      Reasonable Amount of Fees and Expenses

---

[12]*See, e.g.*, Doc. 335 at 118, 121.  At one point, when asked "you can't live in Lawrence without knowing those are the school colors?" Sinks responded, "I would say if not, you're—something's wrong."

[13]*Tex. Tech Univ. v. Spiegelberg*, 461 F. Supp. 2d 510, 522 (N.D. Tex. 2006).

[14]The Court may also award attorneys' fees on the state law claims for infringement.  Under K.S.A. § 81-215, "the court, in its discretion, may enter judgment for an amount not to exceed three times such profits and damages or reasonable attorney fees of the prevailing part, or both, in such cases where the court finds the other party committed such wrongful acts with knowledge or in bad faith, or otherwise as according to the circumstances of the case."  For the same reasons enunciated on the Lanham Act claims, the Court would exercise its discretion and award plaintiffs' reasonable attorneys' fees on the state law claims.

Because the Court has determined that plaintiffs' are entitled to recover reasonable attorneys' fees under the Lanham Act, the Court must now determine the amount of the fee award.  In determining reasonable attorneys' fees, the court arrives at a lodestar figure by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate.[15] The applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.[16]  Once an applicant has met this burden, the lodestar figure is presumed to be a reasonable fee.[17]  The Court may then adjust the lodestar upward or downward as necessary.[18]

## 1.    Lodestar Amount

### a.    Number of Hours Reasonably Expended

The Court must first determine the amount of hours reasonably expended by counsel for plaintiffs.[19]  In order for the applicant to satisfy its burden of proving the number of hours reasonably spent on the litigation, the party must submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."[20]  "The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or

---

[15]*Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

[16]*See Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1249–50 (10th Cir. 1998).

[17]*Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

[18]*Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1103 (10th Cir. 2005), *overruled on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006).

[19]*Case*, 157 F.3d at 1250.

[20]*Id*. (citation omitted).

otherwise unnecessary."[21]  The Court "is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time."[22]

After the Court determines whether counsel exercised billing judgment, it must evaluate the hours expended on each task and determine if they are reasonable.[23]  This determination requires the Court to consider such factors as the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side, and potential duplication of services.[24]  But there is no requirement that the court "identify and justify each disallowed hour.  Nor is their [sic] any requirement that district courts announce what hours are permitted for each legal task."[25]

### Out-of-State Counsel Time

Plaintiffs have submitted the declaration of R. Charles Henn Jr., lead trial counsel for plaintiffs.  He attached to his declaration all of the actual monthly invoices sent from his firm, Kilpatrick Stockton LLP ("Kilpatrick") to KU and the Collegiate Licensing Company ("CLC") for their work on the case.  Kilpatrick is based in Atlanta, Georgia.  According to Henn, Kilpatrick charged 11% of KU's attorneys' fees to CLC pursuant to an agreement between KU and CLC.[26]  He attests that all of the time requested is time that was actually billed to and paid

---

[21]*Robinson*, 160 F.3d at 1280.

[22]*Id.* (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995)).

[23]*Case*, 157 F.3d at 1250.

[24]*Id.* (quoting *Ramos v. Lamm*, 713 F.2d 546, 554(10th Cir. 1983)).

[25]*Id.* (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986)).

[26]The fees charged and paid by CLC are not the same fees requested and denied by the Court with regard to plaintiff's counterclaims and cross-claim.  (Doc. 230).

by KU and CLC and attaches the invoices billed and reconciliation statements.  Henn also attests that he has personally reviewed all of the invoices and has "written off" a total of $87,698 in fees recorded in this matter as an exercise in billing judgment.

Kilpatrick billed KU and CLC for a total of 5150.73 hours between September 27, 2006 and July 15, 2008.  Their work was billed by twelve attorneys, three paralegals, one person in "litigation support," two investigators, five case assistants, and three trial support consultants. Defendants object to the hours billed by plaintiffs' out-of-state counsel on the following grounds: (1) counsel has not exercised billing judgment to write off unproductive excessive, or redundant hours spent on unsuccessful motions practice; (2) the billing records inappropriately include time spent on enforcing KU's marks against third parties; (3) the case was overstaffed resulting in an excessive number of hours; (4) the hours should be reduced because they utilized block billing, making it difficult to assess the time devoted to specific tasks; and (5) plaintiffs seek fees for services provided by non-lawyers performing clerical or secretarial tasks.  The Court discusses these arguments and then conducts its own analysis about the reasonableness of hours expended by plaintiffs' attorneys.

**Hours Spent on Certain Motions Practice.**  Defendants object to the hours expended on (1) plaintiffs' motion for summary judgment, (2) responding to defendants' motion to voluntarily dismiss their counterclaim, (3) plaintiffs' motion to reconsider summary judgment, and (4) plaintiffs' motion to compel, which was later withdrawn.  Defendants contend that this time demonstrates a lack of billing judgment.

The Court agrees with plaintiffs that their time spent on the summary judgment motion and motion to reconsider are recoverable.  Defendants point the Court to no authority for the proposition that time spent on unsuccessful motions are not recoverable.  Preparation of these

motions and briefs would undoubtedly be billed to the paying client, and based on plaintiffs' submissions, they were billed to KU and CLC.  The relevant question is not whether the motions were successful, or even necessary, "but rather whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."[27]

Plaintiffs motion for summary judgment was granted in part and denied in part.  It was granted with respect to a handful of T-shirt designs that the Court found to be infringing as a matter of law and with respect to defendants' affirmative defenses.  The motion was denied with respect to all other T-shirt designs at issue.  Plaintiffs' motion for reconsideration was denied. At the time they filed their motion for summary judgment, plaintiffs clearly anticipated that this Court would follow the district courts in the Eastern District of Louisiana[28] and the Northern District of Texas[29] and enter a blanket order of summary judgment against all of the T-shirt designs at issue in this case.  This Court obviously disagreed and found those cases distinguishable, and also found plaintiffs' approach on summary judgment problematic in that they did not sufficiently support their motion with respect to all of the many marks at issue but instead, expected the Court to make a generalized ruling on all of the over 200 T-shirt designs. Despite these shortcomings, the Court cannot find that a reasonable attorney would not have filed these motions under the circumstances.

Defendants object to time billed between December 5, 2006 and March 22, 2007 related to a motion to compel that they claim was later withdrawn.  Defendants fail to point the Court to

---

[27]*Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 404 F. Supp. 2d 1281, 1284 (D. Kan. 2005).

[28]*Bd. of Supervisors of La. St. Univ. v. Smack Apparel Co.*, 438 F. Supp. 2d 653 (E.D. La. 2006), *aff'd*, 550 F.3d 465 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 2759 (2009).

[29]*Tex. Tech Univ. v. Spiegelberg*, 461 F. Supp. 2d 510, 522 (N.D. Tex. 2006).

any record of this motion being withdrawn.  To the extent defendants reference the motion to compel filed as Docs. 25 and 28 (the only motion to compel filed during the dates noted in the Hudson summary), they are mistaken.  That motion was granted in part and denied in part by Judge Rushfelt on March 22, 2007 (Doc. 72).  For the same reasons explained with regard to the summary judgment motions, time spent preparing and litigating this motion to compel is recoverable.

The Court agrees with defendants that time spent responding to defendants' voluntary motion to dismiss counterclaim and subsequent motion for attorneys' fees is not recoverable. This Court has already considered a motion for attorneys' fees with regard to defendants' voluntary dismissal of their counterclaim and denied the motion pursuant to 42 U.S.C. § 1988(b) (Doc. 230).  Plaintiffs generally argue that the claims are interrelated; the Court disagrees.  The Court has already determined that plaintiffs are not entitled to the attorneys' fees involved in litigating the civil rights counterclaim and the Court will not allow plaintiffs to do an "end-run" around that ruling.  Furthermore, the conversion claim does not involve issues interrelated to the infringement and dilution issues here.  It involves allegations that certain agents of CLC and KU seized defendants' property.  These factual averments do not form the basis of any of the Lanham Act claims, nor the state law claims for which the Court has determined plaintiffs are entitled to attorneys' fees.  Therefore, the Court deducts all time spent litigating this motion to dismiss as an unreasonable amount of hours expended on the trademark litigation as follows, a total of 102.86 hours.  This time is distributed among the timekeepers as follows: 3.24 hours to Henn, 41.87 hours for Jones, 53.52 for Ralls, 3.82 for Teilhaber, and .41 hours for Moore.[30]

---

[30]The Court ntoes that even if the Court found this time to be compensable, it would find that over two weeks of work responding to a voluntary motion to dismiss and motion for attorneys' fees is unreasonable.

**Block Billing.**  As Judge Vratil recently explained, "'[b]lock billing' is the practice of lumping multiple tasks into a single entry of time such that the billing entry does not delineate how hours were allotted to specific tasks."[31]  There is no rule in the Tenth Circuit that "mandat[es] reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block-billing."[32]  But the Court may discount the requested hours if it finds that the records submitted do not allow the Court to determine how the hours were allotted to specific tasks and the reasonableness of that time.[33]

The Court agrees that plaintiffs' time records do not allow the Court to determine the reasonableness of time spent on certain tasks due to block billing.  The Court has reviewed the records and notes a multitude of entries that combine clearly compensable time with clearly noncompensable time, such as time spent researching defendants' counterclaims.  These claims are not related to the Lanham Act claims and, for the same reasons explained with regard to defendants' voluntary motion to dismiss those claims, such work should not be compensated.  Yet, block billing prevents the Court from gleaning precisely how much time Kilpatrick attorneys spent working on such claims.

Another example that illustrates the difficulty with this block billing practice is the following entry by Ralls[34] on June 19, 2007 for 4.45 hours:

> Review motion to exclude Dr. Hirt in the Texas Tech case, as well
> as the opposition of same; research psychology and consumer
> motivation as policy rationale for trademark law; research case law

---

[31] *Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465-KHV, 2009 WL 57133, at *3 (D. Kan. Jan. 8, 2009).

[32] *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000).

[33] *Id.*

[34] "LS" appears to stand for Lauren Sullins Ralls.

> on admissibility of non-trademark experts; begin drafting
> Opposition to Defendant's Motion to Exclude the Expert
> Testimony of Dr. Hirt, including introduction and background
> regarding Daubert standards of reliability.

The Court is unable to tell, for example, how much time was spent by this associate attorney reviewing briefs in a different case that this law firm had previously litigated that involved the same expert, Dr. Hirt, who presumably rendered the same basic opinion.[35]  Given that this law firm utilized Dr. Hirt to provide the same opinion in a previous case, the Court does not find it reasonable that an attorney in the same firm should be compensated for reviewing pleadings that someone else in the firm presumably responded to in the *Texas Tech* case.  Yet, the Court is unable to ascertain from the description in the billing summary how much of Ralls' 4.45 hours were spent on this task.

The Court also notes numerous instances where attorneys billed for time that includes travel time.[36]  But the descriptions of their time do not allow the Court to ascertain how much was spent traveling, as opposed to other tasks in the description, or whether the timekeeper was working while traveling.

While the Court finds that counsels' records are detailed and organized, the Court nonetheless finds that it is impossible to fully address the reasonableness of the hours spent due to block billing given the thousands of hours billed to plaintiffs by Kilpatrick.  As a result, the Court finds that a general reduction of time of 12% is warranted to account for the unreasonableness of some of the work completed by counsel and their failure show how certain

---

[35]Dr. Hirt testified at trial about the psychology of sports fans and the importance of mascots and other team trademarks to the fans' allegiance to their teams.  Given this non-specific testimony, the Court does not expect that Dr. Hirt's opinion was tailored to Texas Tech any more than it was to KU in this case.

[36]The Court acknowledges that there are also come entries that appear to write off travel time.

work was specifically allocated.

**Work on Issue of Third-party Use of the Marks.**  Defendants next complain that the time billed by the Kilpatrick firm inappropriately include charges for services rendered in connection with protecting and enforcing the KU marks against actual or potential infringement by parties other than the defendants.  Defendants identify 208.36 hours of time billed for these services.[37]  Plaintiffs respond that the time spent on these tasks was reasonable because third-party use of their marks was a major issue in this case injected primarily by defendants as a defense to their use of certain marks.  Plaintiffs point to the motions in limine concerning the admissibility of evidence of third-party use of the marks,[38] as well as defendants' use of deposition testimony from the owner of Jayhawk Food Mart in support of this point.

The Court agrees that charging for services involving litigating the issue of third-party use of the marks is reasonable; however, the charges involved in enforcing the marks against these third parties is not.  The issue was injected into this litigation by defendants, who asserted early on that third-party use of plaintiffs' marks was a defense to their own use.  Both before and during trial, the Court was asked to rule on the admissibility of this evidence numerous times. At the time it ruled on summary judgment, the Court considered this evidence of third-party use, holding that plaintiffs' arguments about why it should be excluded go to the weight and not the admissibility of the evidence.  Plaintiffs renewed their motion in limine to exclude this evidence prior to trial, focusing in on proposed exhibits and witnesses at trial that had not been disclosed to plaintiffs.  The Court excluded the proposed witnesses on this subject because they had never previously been disclosed to plaintiffs and granted the motion with regard to exhibits that had

---

[37](Doc. 413, Ex. H.)

[38](Docs. 110, 116, 281).

not been previously disclosed as exhibits to depositions.  Defendants' counsel asked the Court to reconsider its ruling and allow new evidence of third-party use that was discovered during trial, finding it to be improper impeachment.

To the extent that plaintiffs are charging for time spent preparing and arguing the limine motions on this issue, and the evidentiary value of this evidence both on summary judgment and at trial, it is reasonable.  However, the Court deducts all time spent by counsel solely enforcing plaintiffs' marks against third parties—time spent securing licensing agreements with parties not involved in this litigation.  Plaintiffs complain that the summary prepared by Patricia Hudson attributes all billed time that involved these tasks for a given day, even if only a fraction of that time was spent on enforcement of the marks against third parties.  Essentially, plaintiffs argue that because they block billed time, it is unfair to deduct them for time spent only partially enforcing the marks against third-parties.  The Court does not find that each and every entry presented in the Hudson summary should be deducted, and the Court agrees there should not be a further deduction for time that is block billed for enforcement of the mark against third-parties. The Court has already determined that a 12% across-the-board reduction in hours is sufficient to address the block billing problem.  Therefore, those entries block billed for activity in addition to enforcement of the marks against third parties will not be deducted further.  The Court has reviewed the entries associated with enforcement of plaintiffs' marks against third-parties and finds that the following amount of time should be deducted: 1.32 hours to Henn, 31.16 hours to Jones, 10.64 hours to Ralls, 2.93 hours to Stanislo, and .72 hours to Teilhaber.

**Overstaffing**.  Defendants submit that the Kilpatrick firm overstaffed this case, leading to an unreasonable amount of hours billed.  Specifically, they argue that plaintiffs should not be reimbursed for time spent by new attorneys reviewing material to familiarize them with the case.

14

The Court agrees that Kilpatrick had a wealth of talented attorneys already intimately involved in and familiar with this case,[39] so the time spent by new attorneys familiarizing themselves with the case was unreasonable.  However, this is predominately accounted for by the reduction the Court has already made for block billing.  Furthermore, the Court notes that Kilpatrick strongly relied on associate attorneys in this matter for the bulk of hours expended in this litigation.  The vast majority of hours were billed by Lauren Sullins Ralls and Alicia Grahn Jones, both associates who bill at a lower rate than the partners involved in this matter.  As such, the Court declines to impose another reduction in time on the basis of overstaffing.

**Secretarial/Clerical Work**.  Finally, defendants object to hours spent on what they call secretarial or clerical tasks—tasks such as organizing the file, making copies, or any other litigation support services.  Defendants argue that no such fees are properly compensable, even if billed by support staff.  Plaintiffs respond that the tasks billed in Hudson's summary (Doc. 413, Ex. G), are properly billed at paralegal rates and are not mere clerical duties.

There is no question that paralegal fees are compensable.  However, "[p]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."[40] Plaintiffs' counsel argue that the items billed by paralegals are compensable because they involve tasks such as preparing counsel for depositions, filing pleadings, managing deadlines, and preparing for trial.

The Court agrees that some of the entries included in Exhibit G to the Hudson declaration involve purely clerical work.  Tasks that amount to filing, organizing files, making copies,

---

[39]*See Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1256–60 (10th Cir. 2005) ("time spent reading background material designed to familiarize an attorney with an area of the law is presumptively unreasonable.").

[40]*Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989).

printing, ordering file folders, organizing boxes, updating files with correspondence and pleadings, and preparing files for storage will be deducted as purely clerical work that is not compensable as follows: 14.86 hours to Fesshazion, .41 hours to Klug, 2.44 hours to Hingley, and .81 hours to Teilhaber.

The remaining work described in this summary is properly compensable paralegal work. These tasks mostly involve preparing attorneys for depositions and for trial, including managing the voluminous exhibits that were used at trial.  To be sure, the Supreme Court identified the following activities of paralegal work that may be performed under attorney supervision: "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence."[41]  The Court finds that it was reasonable for counsel to bill for tasks that assisted counsel with discovery and with trial preparation.

**Remaining Analysis**.  All of the requested fees in this matter were actually billed by Kilpatrick and paid by KU and CLC.  And Henn's declaration provides that he personally reviewed the invoices in this matter and wrote off approximately $87,000 in recorded time in the exercise of billing judgment.  The Court finds that the subject matter of this case is somewhat complex—this is a trademark infringement and dilution case that involved many novel legal issues.  It also involved a large amount of factual issues, as evidenced by the more than 200 products evaluated by the jury in rendering its verdict.

The Court finds that plaintiffs pursued a reasonable amount of strategies in this matter,

---

[41]*Id.*

focusing almost exclusively on the infringement and dilution claims, consolidating their arguments on the federal and state claims.  The case involved a heavy amount of motions practice: multiple motions in limine both at the summary judgment stage and at trial; multiple *Daubert* motions, and multiple motions for summary judgment by both sides.  Plaintiffs were also required to respond to a number of affirmative defenses that defendants ultimately abandoned on summary judgment.  The case proceeded to a trial that lasted for approximately three weeks.[42]

The Court has reviewed the invoices in this matter, and still finds the amount of hours spent on many tasks involved in this litigation excessive even after the deductions already applied.  The factor about responses made necessary by the maneuvering of the other side is difficult to evaluate.  At trial, the Court was asked to rule on numerous evidentiary issues that involved evidence submitted for the first time by defendants at trial. Plaintiffs' counsel argued that they had made numerous unsuccessful attempts to discover various information in the pretrial stage of the proceedings.  The most significant example was defendants' statements of profits and costs associated with the sale of allegedly infringing material.  Yet, the responses that plaintiffs' counsel believed were made necessary by these maneuverings was not necessarily reasonable.  As the Court has already suggested, spending over two weeks responding to a voluntary motion to dismiss, comprised of the work of five timekeepers does not seem reasonable.  At each stage of this litigation, defendants' counsel was by all accounts out-manned and out-papered by plaintiffs' counsel in this matter.  Given the obvious and intense imbalance of representation, the Court does not find that this factor weighs heavily in favor of the large

---

[42]The Court was also called upon to rule on multiple post-trial motions; however, plaintiffs' only request fees through the end of the trial.

amount of hours expended by the Kilpatrick attorneys and further supports the Court's reduction of hours.

The Court also finds that the billing records suggest duplication of services with regard to conferences. The Court located double billings for time spent by two or more attorneys "conferencing" on matters involved in this case. Defendants should not be required to compensate plaintiffs more than once for time spent by multiple attorneys in the same meeting.

Finally, the Court notes Kilpatrick's experience with the issues involved in this case. Kilpatrick attorneys represented plaintiff universities and the CLC in at least two cases prior to filing this case that involved the protection of collegiate trademarks. In fact, plaintiffs' motion for summary judgment heavily relied on the holdings in the *Texas Tech* and *Smack* cases, urging this Court to follow those courts' lead and find all of their trademarks protectable and that infringement and dilution occurred as a matter of law. Counsel utilized the same expert on the psychology behind team allegiance, Dr. Hirt. Indeed, counsels' primary argument in support of their fee rate is that they have specialized experience in cases involving collegiate trademarks and colors. Given this base of knowledge and experience in recent, prior litigation involving almost identical issues, the Court finds these attorneys should not have been required to recreate the proverbial wheel on many of the issues involved in this case. Counsel had a base level of research and knowledge about the legal issues that should have reduced the amount of time they spent on this case. But, these attorneys billed half as many hours in the *Smack* case after two and one-half years of litigation.[43] While the Court understands that counsel would reasonably spend

---

[43] *See Bd. of Supervisors of La. St. Univ. v. Smack Apparel Co.*, Case. No. 04-1593, Report and Recommendation, Doc. 261 at 47 (E.D. La. May 23, 2007).  (Doc. 412, Ex. A.)

more hours on this case because it proceeded to a full trial,[44] the great disparity in hours spent is troublesome considering that the legal issues involved, while novel generally, were not terribly novel for this group of attorneys.  For the above-stated reasons, the Court finds a further 5%  of the submitted hours should be deducted from each timekeeper in this matter.

The Court finds that this further reduction will produce a reasonable number of hours expended for the lodestar calculation.  The total amount of time to be deducted, considering all of the relevant factors, is 168.15 total hours for work spent responding to defendants' motion to voluntarily dismiss the counterclaims, performing certain clerical work, and enforcing the marks against third parties.  After making these deductions, the Court imposes a further 17% total reduction in hours for each timekeeper to account for all of the remaining problems discussed by the Court.

### Local Counsel Time

Plaintiffs have submitted the affidavit of Douglas Greenwald of McAnany, Van Cleave & Phillips, P.A. ("McAnany") who served as local counsel in this matter.  Greenwald attached the invoices from his firm, listed by date and timekeeper from September 2006 through July 15, 2008.  McAnany billed plaintiffs for a total of 75.9 hours, for work performed by two attorneys, two paralegals, and two legal assistants.  The Court has reviewed these invoices and finds that local counsel exercised the requisite billing judgment.  The time billed is the amount that was actually billed to the client and the Court finds it to be reasonable in light of the limited role the McAnany firm performed in this matter.

### b.      Reasonable Hourly Rate

---

[44]A trial was conducted in the *Smack* case on the limited issue of damages.

The Court must next determine the reasonable hourly rates for several different attorneys and support staff involved in this case on behalf of plaintiffs.  In examining the hourly rate, the court is to refer "to the prevailing market rates in the relevant community."[45]  "The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time."[46]  In making this determination, if the court does not have before it adequate evidence of prevailing market rates, the court may, in its discretion, "use other relevant factors, including its own knowledge, to establish the rate."[47]

Plaintiffs submit declarations by Henn and by Mauri Scheidler to demonstrate that the Kilpatrick attorneys' rates are compatible with the appropriate market.  Henn states in his declaration that the Kilpatrick rates charged in this matter are within the range that comparable attorneys with their experience in the intellectual property field, as their rates are below median rates reported by the American Intellectual Property Law Association's ("AIPLA") Report of Economic Survey 2007.  Henn attached this report to his declaration.[48]

Scheidler is the Director of Finance for Kilpatrick.  She is responsible for surveying the market to determine appropriate rates for attorneys in the firm.  Scheidler attests that trademark litigation is a "national practice," so she obtains and reviews survey data showing rates of competitive firms and attorneys throughout the country to determine the appropriate rates for Kilpatrick's attorneys.  Scheidler states that the Kilpatrick attorneys' rates are comparable to

---

[45]*Blum v. Stenson*, 465 U.S. 886, 895 (1984).

[46]*See Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1256 (10th Cir. 1998).

[47]*Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) (citing *Case*, 157 F.3d at 1257).

[48](Doc. 381, Ex. E.)

Kilpatrick's competitors' rates in 2007 based on a survey prepared by PricewaterhouseCoopers LLP, attached to her declaration.[49]

The Kilpatrick attorneys submit that because this case involves the specialized area of trademark litigation, the Court should not compare their rates to comparable rates in the place where the litigation occurs, but instead to rates of attorneys of comparable skill and experience who specialize in trademark or intellectual property litigation nationally.  Defendants object and argue that the relevant community in determining a reasonable rate is the place where the litigation occurs.[50]

"While a party is free to select counsel from any locality, absent a clear showing that the matter could not reasonably have been handled by counsel from the locality, rates above the prevailing local hourly rates should be applied."[51]  Plaintiffs appear to suggest that the only way to acknowledge the intellectual property expertise of the Kilpatrick attorneys is to award them at or near the median national rate of attorneys in that field.  All of the authority cited by plaintiffs for awarding national rates under these circumstances are distinguishable.  Notably, plaintiffs provide no authority from this Circuit that national rates should always apply in intellectual property cases in general, or trademark cases in particular.[52]  In *Reazin v. Blue Cross & Blue*

---

[49](Doc. 374, Ex. A.)

[50]*See Wirtz v. Kan. Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1200 (D. Kan. 2005).

[51]*Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1259 (10th Cir. 2005); *see also Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006).

[52]The cases cited for the proposition that the AIPLA survey evidences reasonable rates all involve patent litigation, and at least two of those patent cases specify that the survey is being used for a determination of the reasonable rate in a specific metropolitan area. *Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 151 F. Supp. 2d 1192, 1211–12 (C.D. Cal. 2001), *rev'd on other grounds*, 351 F.3d 1139 (Fed. Cir. 2003) (involving determination of reasonable rate for in patent case in California); *Yamanouchi Pharm. Co. v. Danbury Pharacal, Inc.*, 51 F. Supp. 2d 302, 304 (S.D.N.Y. 1999) (determining reasonable rate for New York law firm using AIPLA survey).

*Shield*,[53] the court explained that courts granting fees above the local rate generally have confined such awards to attorneys possessing "specialized skills in a narrow area of law, such as admiralty law, patent law, or antitrust and other complex litigation."[54]  The court in *Kansas Turnpike Authority v. Morgan Guaranty Trust Co.*,[55] awarded out-of-state rates, finding that the case involved complex litigation and concerned "one of the most complicated financing issues in Kansas in years."[56]

While the Court finds that the Kilpatrick attorneys have significant specialized experience litigating trademark issues, specifically with regard to collegiate trademarks, it is unable to find that this matter could not reasonably have been handled by attorneys in the Kansas City area.[57]  The Court does not agree that the legal and factual issues of this case are on par with the patent issues and financing issues discussed in the authority cited by plaintiffs.[58]  While the issues may be novel in the sense that there is little direct authority on point with regard to collegiate trademark infringement and dilution claims, they do not rise to the level of complexity that would not allow local attorneys to reasonably litigate this matter.  The case involved the sale of T-shirts by a locally-owned business that plaintiffs allege amounted to trademark infringement

---

[53]664 F. Supp. 1360, 1453–54 (D. Kan. 1987).

[54]*Id.* at 1454.

[55]751 F. Supp. 936 (D. Kan. 1990).

[56]*Id.* at 938.

[57]The Court reminds defendants that this case was filed in the Kansas City, Kansas division.  It was reassigned to the undersigned who presides in the Topeka, Kansas division after Judge Vratil recused.

[58]*See, e.g.*, *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 820 F. Supp. 1330, 1333 (D. Kan. 1993) (finding out-of-state rates justified in patent and antitrust case that consumed seventy-nine trial days and twenty-six jury trial deliberation days), *aff'd in part, rev'd in part, vacated in part*, 1 F.3d 1253 (Fed. 1993); *Monsanto Co. v. Bayer Cropscience, N.V.*, No. 4:00CV01915-ERW, 2007 WL 1098504, at *8 (E.D. Mo. Apr. 12, 2007) (using AIPLA survey in patent case that was "particularly complicated").

and dilution because they were likely to cause confusion in the marketplace as to their source or sponsorship, and because they blur or tarnish the marks. Defendants sell their products online and at a single retail store in the same town as where the University is located. The legal and factual issues did not necessitate the services of attorneys from outside the District of Kansas. Defendants retained local counsel for the majority of the life of this case, and by all accounts, were outnumbered by the amount of attorneys' representing plaintiffs.

Plaintiffs suggest that defendants' retention of out-of-state counsel proves that only out-of-state counsel can reasonably litigate this matter. While it is true that defendants' trial counsel was from the Tulsa, Oklahoma area, defendants' counsel during the majority of this case were based in Lawrence, Kansas. Plaintiffs have no basis for asserting that defendants' retention of out-of-state counsel was due to the fact that only out-of-state counsel could reasonably defend them. In fact, the record does not support such an assertion. Certainly, trademark infringement actions may be reasonably handled by attorneys practicing in this community. This is supported by the fact that many trademark infringement cases have been handled by local attorneys in this district in other cases,[59] and by the exhibits submitted by defendants showing the multitude of attorneys registered as intellectual property attorneys on the Martindale.com directory and through the AIPLA.[60]

Having found that plaintiffs failed to make a clear showing that this matter could not

---

[59]*See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 123 F. Supp. 2d 582 (D. Kan. 2000); *see also John Allan Co. v. Cray Allen Co., L.L.C.*, 505 F. Supp. 2d 986 (D. Kan. 2007), *rev'd*, 540 F.3d 1133 (10th Cir. 2008). Plaintiffs also suggest that the presence of federal claims in this case is another factor warranting out-of-state counsel. Surely plaintiffs do not suggest that out-of-state rates should be applied in every case involving federal claims. This argument is contrary to the governing law in this circuit, which makes clear that local rates should apply as a general rule. *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006).

[60](Doc. 412, Exs. C, D.)

reasonably have been handled by local counsel, the Court must determine a reasonable rate in this community for attorneys with comparable skill and experience practicing in intellectual property or trademark litigation.  Aside from submitting the actual rate claimed by Greenwald as local counsel in this matter, plaintiffs offer no evidence of the reasonable rate for attorneys with their level of experience in intellectual property litigation in the Kansas City area.

Defendants submit that the Court should rely on the Kansas Bar Association's ("KBA") 2005 survey of median hourly billing rates.[61]  Plaintiffs object that the survey should not be used as a guideline, citing *United Phosphorus, Ltd. v. Midland Fumigant, Inc*.  The court in *United Phosphorous* declined to rely on the 1997 KBA survey, explaining that the response rate in the Kansas City area was low, that the results were not specific within geographical areas, and that the results mainly dealt with means and percentiles.[62]  Yet, other courts have suggested the KBA survey provides probative evidence of market rates in Kansas.[63]  While there are shortcomings to the KBA survey, it is at present the only evidence of market rates in the applicable community before the Court.  The 2005 survey provides both a mean and median billing rate broken down by firm size, years in practice, office location, practice classification, and field of law.  The data was obtained from approximately 635 usable returned questionnaires, 39.4 percent of which were from attorneys who office in either Kansas City, Missouri or the Greater Kansas City, Shawnee Mission, Kansas area.  The Court has reviewed this data and finds that it is consistent with the Court's own knowledge of the rates utilized in the Kansas City area.  The Court

---

[61](Doc. 412, Ex. B.)

[62]123 F. Supp. 2d at 585.

[63]*See Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1256 n.1 (10th Cir. 1998); *Augustine v. Adams*, No. 98-2422-GTV, 2000 WL 1375288, at *2 (D. Kan. Sept. 15, 2000); *Wilder-Davis v. Bd. of Comm'rs of Johnson County, Kan.*, No. 98-2363-GTV, 2000 WL 1466691, at *5 (D. Kan. Aug. 8, 2000).

proceeds to determine the reasonable rates for the attorneys who worked for plaintiff, taking into account the amount of years they have been in practice and their expertise in trademark law using the survey as a guidepost.

Henn states that all twelve of the Kilpatrick attorneys who worked on this case are highly specialized in trademark or patent law.  Henn is a partner at Kilpatrick who had been in practice for eight to ten years during the relevant time period.  At trial, Henn served as lead counsel, conducted witness examinations, prepared witnesses and delivered the opening statement and closing argument.  He has been recognized by his peers and the media as one of the top young intellectual property litigators in Atlanta.  His hourly billable rates during the relevant time period ranged from $355 to $455.  While these rates compare favorably to the AIPLA and PricewaterhouseCoopers data submitted by plaintiffs, they are significantly higher than the rates for comparable attorneys in the Kansas City area.  Still, the Court finds based on Henn's expertise in the area of collegiate trademark litigation and his eight to ten years of experience, a reasonable rate should be at the top of the range of rates charged by partners in the Kansas City area.  The Court finds $315 to be a reasonable rate taking into account all of this information.

One other partner from Kilpatrick billed a comparably nominal amount of time on this matter, Theodore H. Davis, Jr.  According to the information submitted by plaintiffs, he had been in practice for sixteen to eighteen years during the course of this litigation and specializes in trademark litigation.  Given his experience and expertise, the Court finds that his reasonable rate is $330.

Jones and Ralls billed the most significant amount of hours in this matter.  Jones is an associate attorney with two to four years' experience during the relevant time period.  She participated at trial, conducting examinations and preparing witnesses.  Jones' hourly billable

25

rates during the relevant time period ranged from $220 to $325.  Ralls is an associate attorney

with zero to two years' experience during the relevant time period.  Ralls' hourly billable rates

during the relevant time period ranged from $195 to $275.  Ralls and Jones were responsible for

the lion's share of pretrial motions, briefs, and trial preparation.  In addition to Jones and Ralls,

eight other associates billed significantly less time on this matter.  Their experience ranges from

zero to seven years of practice and their hourly rates ranged from $250 to $350.  Henn avers that

all of these hourly rates for Kilpatrick associates are consistent with intellectual property

attorneys with comparable levels of experience and are below the PricewaterhouseCoopers

survey for associates with similar graduation years.

The Court has taken into account the expertise of these associates in trademark law, and

finds the following rates reasonably comparable to other attorneys in the community with similar

experience:

| Associate Attorney | Years of Experience | Reasonable Rate |
|---|---|---|
| Jones | 2-4 | $175 |
| Ralls | 0-2 | 150 |
| Egan | 0-2 | 150 |
| Linder | 0-1 | 150 |
| Pequignot | 0-2 | 150 |

| Associate Attorney | Years of Experience | Reasonable Rate |
|---|---|---|
| Lick | 4-6 | 200 |
| Marino | 4-6 | 200 |
| Hart | 4-6 | 200 |
| Hooker | 0-2 | 150 |
| Hanes | 5-7 | 210 |

McAnany requests rates of $150 for both Greenwald and one other attorney who billed time on this matter, Megan Walawender.  Given Greenwald's experience, yet limited role in this litigation, the Court finds this rate to be reasonable.  Counsel has submitted no information about Walawender, however, so the Court is unable to determine that the same rate is reasonable for her.  Instead, the Court finds a rate at the low-end of associates in the Kansas City area to be reasonable, or $125.

Significant amounts of time were also billed by paralegals, trial support consultants, case assistants, and investigators.  Plaintiffs provide no evidence about the reasonable rates for these timekeepers, nor do they provide information about their respective experience.  The KBA survey shows a median hourly billing rate for legal assistants in Kansas between $55 and $75, depending on experience.  The Court finds a rate of $75 is reasonable for all of the litigation support services rendered in this case based on Greenwald's affidavit that sets forth this amount as a reasonable rate and the KBA survey.

Based on the Court's analysis of the reasonable time expended by timekeepers on this case and the reasonable rate to be applied to each timekeeper, the Court calculates the lodestar as set forth in Attachment A.  The total lodestar is $628,968.40.

**2.      Lodestar Adjustment**

27

"The lodestar is the presumptively reasonable fee."[64]  But "'[t]he product of reasonable hours times a reasonable rate does not end the inquiry,' however, of determining whether a fee is reasonable."[65]  The court may adjust the lodestar upward or downward if necessary.[66]  In fashioning the ultimate award, the Court may consider the factors identified in *Johnson v. Georgia Highway Express, Inc.,*[67] although many of those factors are subsumed within the lodestar calculation.[68]

In evaluating whether the lodestar should be adjusted when the prevailing party achieves only partial success, the Court should consider: (1) whether plaintiffs failed to prevail on claims that were unrelated to the claims on which they succeeded, and (2) whether plaintiffs achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."[69]  In considering whether a downward adjustment for partial success on related claims is warranted, the court should not consider the case "as a series of discrete claims.  Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[70]

Defendants urge that the Court should adjust any award downward because plaintiffs only prevailed with regard to approximately 25% of the T-shirt designs at issue in this case.

---

[64]*Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1493 (10th Cir. 1994).

[65]*Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1103 (10th Cir. 2005) (quoting *Hensley v. Eckerhart*, 461 U.S. 434 (1983))

[66]*Metz*, 39 F.3d at 1493.

[67]488 F.2d 714, 717–19 (5th Cir. 1974).

[68]*See Hensley*, 461 U.S. at 434 n.9.

[69]*Id.* at 434.

[70]*Id.* at 435.

Plaintiffs correctly respond that they prevailed on all six of the claims presented to the jury at trial.  The jury was asked to make separate findings on each T-shirt design for the limited purpose of assessing damages and determining the appropriate injunctive relief.  Plaintiffs' assertions on the various T-shirt designs in this case all involved a common question of fact—whether each T-shirt design infringed on KU's protectable trademarks and/or whether the T-shirt designs diluted those marks.  While a separate factual finding was required for each product at issue in order to assess damages and injunctive relief, plaintiffs were not unsuccessful on any of the *claims* submitted to the jury.  Therefore, the Court declines to adjust the presumptively reasonable lodestar downward to reflect partial success.  The Court awards plaintiffs $628,968.40 in reasonable attorneys' fees.

### 3.        Nontaxable Costs (Expenses)[71]

Defendants primarily object to the expenses requested by plaintiffs as not taxable under 28 U.S.C. § 1920.  But there is no dispute that these expenses are not taxable; plaintiffs argue that they are recoverable as attorneys' fees as part of the fee shifting provision in 15 U.S.C. § 1117(a) as the prevailing party in an "exceptional" case.  The Tenth Circuit has explained that "reasonable expenses incurred in representing a client in a civil rights case should be included in the attorney's fee award if such expenses are usually billed in addition to the attorney's hourly rate."[72]  Courts have found that an award of "attorney's fees" under the Lanham Act includes

---

[71]Under Fed. R. Civ. P. 54(d), taxable costs should be allowed to the "prevailing party" unless a federal statute, rule, or court order provides otherwise.  Plaintiffs have separately filed their bill of costs (Doc. 370).  Under D. Kan. R. 54.1(a) the bill of costs is considered in the first instance by the Clerk, who will wait until the appeal in this matter is decided before acting.  After the Clerk taxes costs, and if defendants object to the Clerk's action, they may file a motion to retax costs.  Therefore, the Court does not address taxable costs at this time.

[72]*Case*, 157 F.3d at 1257.

out-of-pocket expenses that are not taxable.[73]  These fees should be awarded if "(1) the expenses

are not absorbed as part of a law firm overhead but are normally billed to a private client, and (2)

the expenses are reasonable."[74]  Plaintiffs request the following categories of expenses in their

fee application: (1) online research, (2) travel, (3) "professional services" such as experts,

consulting, investigative, mediation, and other litigation support fees, (4) telecommunications

such as long distance fees, and (5) postage, express mail, deliver, and messenger expenses.

### Online Research

Plaintiffs request $54,836.04 for Westlaw, Lexis, and related legal research, the amount

actually paid by KU.  Kilpatrick submits that it invoiced less than the actual Westlaw and Lexis

expenses that they incurred, but do not state by how much.  Kilpatrick further submits that these

expenses are normally billed to their clients and not absorbed as overhead.  The Tenth Circuit

has explicitly acknowledged that computer-assisted research, while not taxable under § 1920, is

a "substitute for an attorney's time that is compensable under an application of attorney's fees."[75]

Thus, the Court must determine whether the expense request is reasonable.  It is not.

---

[73]*See World Triathalon Corp. v. Dunbar*, 539 F. Supp. 2d 1270, 1290 (D. Haw. 2008); *Tri-Star Pictures, Inc. v. Unger*, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 21 F. Supp. 2d 1255, 1262 (D. Kan. 1998), *aff'd in part & rev'd in part on other grounds*, 205 F.3d 1219 (10th Cir. 2000). Defendants argue that the Magistrate Judge in *Smack* found that the Lanham Act does not permit recovery of costs outside § 1920.  This is incorrect.  Judge Wilkinson found that out-of-pocket nontaxable costs could not be recovered as part of a fee award because he had not found it to be an exceptional case under 15 U.S.C. § 1117(a); the motion for attorneys' fees was only granted with respect to the state law claims.  Judge Wilkinson explained that plaintiffs could not be awarded nontaxable expenses as part of a *costs* award under the Lanham Act as those expenses are only recoverable as part of a *fee* award. *Bd. of Supervisors of La. St. Univ. v. Smack Apparel Co.*, Case. No. 04-1593, Report and Recommendation, Doc. 261 at 52–53 (E.D. La. May 23, 2007).  (Doc. 412, Ex. A.) Furthermore, McCarthy is not inapposite, as defendants fail to provide the entire context for their quotation regarding the law of the Fourth Circuit.  Immediately following defendants' quotation, McCarthy writes: "expenses for items such as attorney travel and computer research are not deemed to be 'costs' under federal law, such items might be recovered as part of attorney's fees under a fee-shifting statute."  J. Thomas McCarthy, 5 McCarthy on Trademarks and Unfair Competition § 30:107 (4th ed. 2009).

[74]*United Phosphorus, Ltd.*, 21 F. Supp. 2d at 1262.

[75]*See, e.g.*, *Sorbo v. UPS*, 432 F.3d 1169, 1180 n.11 (10th Cir. 2005).

Henn submits a separate accounting of Westlaw research, indicating the date on which the research occurred, the timekeeper, the amount billed, and the amount invoiced.  In order to figure out what type of research was being conducted during this time, the Court is required to cross-reference the billing invoices.  Even then, the Court is unable to determine the time spent on various research due to counsels' block billing practice.  Considering these problems with documentation, it is apparent that many of the charges are unreasonable.  By way of illustration, there were two research sessions conducted on March 29, 2007, billed to the firm at $829.52 and $165.78, respectively.  The only legal research described on that date is "research regarding Judge Robinson," one of many tasks that comprised Jones' time that day for a reported total of 4.90 hours, for which other non-research tasks are block billed.  The Court also notes that associate attorneys conducted a fair amount of research familiarizing themselves with the law and with researching issues surrounding defendants' counterclaims.  The Court finds that, given the Kilpatrick attorneys' expertise in trademark law, and the fact that these attorneys could have and should have relied more heavily on non-computerized research, the research fees are excessive.

Due to the failure to adequately document how almost $55,000 was spent on research in this matter, as well as the shortcomings listed above, the Court finds that a deduction of 50% is warranted.  Plaintiffs are awarded reasonable online research expenses of $27,418.02.

*Travel*

Plaintiffs request $26,400.66 in travel expenses for Kilpatrick attorneys and staff involved in this case.  These expenses include airfare, auto rental, hotel, meals, and miscellaneous expenses.  The Tenth Circuit has stated in the civil rights context:

> Items that are normally itemized and billed in addition to the

31

> hourly rate should be included in fee allowances in civil rights
> cases if reasonable in amount. However, because there is no need
> to employ counsel from outside the area in most cases, we do not
> think travel expenses for such counsel between their offices and
> the city in which the litigation is conducted should be reimbursed.
> Departure from this rule should be made in unusual cases only.
> Thus, the district court properly disallowed travel costs to and
> from Denver for counsel based in Washington, D.C. The district
> court properly allowed reimbursement for the expense of travel
> between Denver and the Canon City prison, given its finding that
> such costs would normally be billed to a private client.[76]

The Court has already found that plaintiffs failed to make a showing that local counsel could not

have reasonably handled this litigation. Similarly, the Court is unable to make a finding that

this is the unusual case where travel expenses for counsel between their offices and the site of

the litigation should be reimbursed. However, the Court does find that the travel costs associated

with the commute for counsel between Kansas City and Topeka is warranted as costs that would

normally be billed to the client if local counsel only had been used. This case was originally

filed in Kansas City but was transferred to the undersigned, who presides in the Topeka division.

Thus, the Court awards those travel expenses that are obviously associated with this commute:

rental car expenses in the amount of $928.05, hotel expenses in the amount of $920.12, meals in

the amount of $2066.40, and parking expenses in Topeka in the amount of $10.02. Plaintiffs are

awarded a total of $3924.59 in total travel expenses.

### Professional Services

Plaintiffs request expenses associated with the use of certain professional services in the

amount of $88,674.84. The requested fees break down as follows: $84,293.45 for expert

witnesses, $3880 for mediation expenses, and $591.39 for investigative services related to

---

[76]*Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983), *overruled in part on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987)); *Quail Creek Petroleum Mgmt. Corp. v. XL Specialty Ins. Co.*, 129 F. App'x 466, 472 (10th Cir. 2005).

Jayhawk Foodmart.  As already discussed, the Court does not find that plaintiffs should be reimbursed for work involving the enforcement of KU's marks against third parties such as Jayhawk Foodmart.  Thus, the expense of hiring an investigator with regard to this issue is not reasonable.

Plaintiffs urge that they should be reimbursed for expert witness fees, citing to cases interpreting 42 U.S.C. § 1988.  But that statute explicitly provides: "In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."[77]  There is no similar provision in the Lanham Act.  And the Supreme Court has made clear that "attorney's fees and expert fees are regarded as separate elements of litigation cost" in federal statutes.[78]  "Because the Lanham Act confers no authority upon the court to exceed § 1821's caps, plaintiffs' expert witness fee request is limited"[79] to the expenses set forth in that statute.  This request will be considered by the Clerk in the context of taxable costs.

Plaintiffs provide this Court with no authority for the assertion that mediation fees are reimbursable expenses.  However, they do attest that these expenses are not part of the firm's overhead and that they were billed to the client.  The Court finds that the amount requested for mediation fees is reasonable and plaintiffs are awarded mediation fees in the amount of $3880.

### *Telecommunications*, *Phone Conferencing, and Facsimile*

---

[77] 42 U.S.C. § 1988(c).

[78] *W. Va. Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 88–90 (1991), *superseded by statute*, 42 U.S.C. § 1988; *see also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).

[79] *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 21 F. Supp. 2d 1255, 1262 (D. Kan. 1998), *aff'd in part & rev'd in part on other grounds*, 205 F.3d 1219 (10th Cir. 2000).

Plaintiffs request $1473 in telecommunications/long distance expenses and $213.76 in phone conferencing and facsimile costs.  Such fees are properly recoverable as expenses for an attorneys' fee award.[80]  The Court has examined the records submitted by plaintiff and finds these expenses to be reasonable.

### Mail and Delivery

Plaintiffs request $7145.82 for expenses such as postage, express mail, delivery, and messenger services.  These expenses are not absorbed as part of the firm's overhead, but are billed to the client.  But the records submitted by plaintiffs do not provide enough information to determine that they are reasonable.  While the Court can tell that a few of the mailings were exhibits sent to the Court, based on the name of the recipient, the vast majority constitute Federal Express packages sent between the Kilpatrick office in Atlanta and members of that firm when they were working in Kansas and other locations.  It is unclear why these expenses were reasonably necessary or why a less expensive mail service could not have been used.  Most importantly, there is absolutely no record of what is being sent on any of these mailings.  The records merely reflect what date the mailings were sent, when they were invoiced, who in the firm sent the item, and the name of the recipient.  Given these deficiencies, the Court is unable to find that the requested expenses are reasonable and instead awards plaintiffs reasonable mail and delivery expenses in the amount of $1000.

### Miscellaneous Expenses

Plaintiffs request other expenses for staff overtime, PACER fees, purchases of defendants' products, and a summons fee for Jayhawk Foodmart.  As already discussed in detail,

---

[80]*Wirtz v. Kan. Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1211 (D. Kan. 2005).

the Jayhawk Foodmart expense is not reimbursable.  The Court further finds that staff overtime should not be reimbursed as a separate expense apart from the fee award calculated for the lodestar.  The remaining fees are reasonable and amount to a total of $629.65.

### Computation of Expenses

Given the Court's findings on reasonable expenses in this matter, plaintiffs' award is as follows:

| Categories of Expense | Requested Amount | Reasonable Amount |
|---|---|---|
| Computer-Assisted Research | $54,836.04 | $27,418.02 |
| Travel | $26,400.66 | $3924.59 |
| Professional Services | $88,764.84 | $3880 |
| Telecommunications | $1473 | $1473 |
| Ph. Conferencing and Facsimile | $213.76 | $213.76 |
| Mail and Delivery | $7145.82 | $1000 |
| Miscellaneous | $4135.65 | $629.65 |
| **Total** | $182,969.77 | $38,539.02 |

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiffs' Motion for Attorneys' Fees and Expenses (Doc. 372) is **granted**.  Plaintiffs are awarded attorneys' fees in the amount of $628,968.40 and expenses in the amount of $38,539.02, for a total award of $667,507.42

**IT IS SO ORDERED.**

Dated:  September 28, 2009

        S/ Julie A. Robinson        
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE