# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNIVERSITY OF KANSAS and KANSAS ATHLETICS, INC.,** ) ) ) **Plaintiffs,** ) ) **vs.** ) ) **LARRY SINKS, CLARK ORTH, and VICTORY SPORTSWEAR, L.L.C. (collectively d/b/a/ Joe-College.com),** ) ) ) ) ) **Defendants.** ) ) | Case No. 06-2341-JAR |

## MEMORANDUM AND ORDER

Before the Court is defendants' Motion to Reconsider Memorandum and Order Dated September 28, 2009 Granting Plaintiffs' Motion for Attorneys' Fees and Expenses (Doc. 433). Defendants' motion asks the Court to reconsider its Memorandum and Order (Doc. 432) ("September 28 Order") granting plaintiffs' motion for attorneys' fees and entering an award of reasonable attorneys' fees and expenses. The motion is fully briefed and the Court is prepared to rule. As explained more fully below, defendants' motion is denied.

### *Standard*

Local Rule 7.3(a) provides that "[m]otions seeking reconsideration of dispositive orders or judgments must be filed pursuant to Fed. R. Civ. P. 59(e) or 60." Because this motion was filed within ten days of the September 28 Order, the Court construes it as a motion to alter or amend judgment under Rule 59(e).[1] A motion to alter or amend judgment pursuant to Rule 59(e)

---

[1] *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997).

may be granted only if the moving party can establish: (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice.[2] Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[3]

*Discussion*

Defendants argue that reconsideration is appropriate under Rule 59 in order to correct clear error or prevent manifest injustice. Defendants argue that the Court's finding that plaintiff is entitled to reasonable attorneys' fees was in error for the following reasons: (1) the Court did not apply a clear and convincing evidence standard to its finding that the case is exceptional under 15 U.S.C. § 1117(a); (2) the Court attributed weight to the jury's finding that defendants acted willfully or in bad faith; (3) the Court found that Sinks' testimony supports a finding of intentional trademark infringement; (4) the Court failed to consider Sinks' trial testimony that he relied on advice of counsel when he decided to continue to sell the T-shirts at issue after receiving the cease and desist letter from plaintiffs; and (5) Sinks should have been deemed a "prevailing party" because the jury found that he was entitled to manufacture and sell approximately 75% of the T-shirts plaintiffs claimed were infringing. For the first time in its reply memorandum, defendants complain that the Court gave too little consideration to the Fifth Circuit's opinion in *Board of Supervisors for Louisiana State University Agricultural &*

---

[2]*Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995).

[3]*Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir. 1996), *cert. denied*, 520 U.S. 1181 (1997).

*Mechanical College v. Smack*.[4]

All of the arguments offered in the motion for reconsideration were made by defendants in the first instance. They were duly considered and rejected. Out of an abundance of caution, the Court explains why none of these arguments succeed in showing that the September 28 Order amounts to clear error or manifest injustice. The Court declines to consider arguments raised for the first time in a reply brief.

### 1. Prevailing Party Status

Defendants state at the end of their motion that Sinks was a prevailing party in this action and argue that the Court gave little weight to the fact that plaintiffs did not prevail on the majority of T-shirts at issue in the case. Notably, defendants cite no authority in this section of their brief for the proposition that this issue should have any bearing on the Court's determination of *entitlement* to attorneys' fees under the Lanham Act. And, notably, defendants do not go so far as to argue that plaintiffs are not prevailing parties under § 1117(a). The Court adequately addressed the issue of partial success when it discussed whether the lodestar should be adjusted, finding such an adjustment inappropriate.

Defendants have repeatedly misconstrued the significance of the relief obtained by plaintiffs at trial. Plaintiffs consistently asserted six claims for relief in this matter and the jury found liability on all six claims against all three defendants. The findings on each T-shirt at issue merely allowed for an accurate determination of injunctive relief and damages. Counsel may recall that this issue was an issue when determining the proper verdict form. The Court granted defendants' request for a finding of liability with regard to each T-shirt at issue, even

---

[4] 550 F.3d 465 (5th Cir. 2008).

though they failed to submit a workable proposed verdict form, solely to aid in the Court's ability to craft injunctive relief if the jury found defendants liable.[5] Even if the jury only found defendants liable with regard to *one* of the T-shirts at issue, defendants would still be liable and plaintiffs would still be the prevailing party, as that term is used in the statute. The fact that defendants chose to manufacture over 200 allegedly infringing T-shirt designs, rather than one or six, does not affect the Court's inquiry into whether plaintiffs are the prevailing party. Plaintiffs are clearly the prevailing parties—they recovered both damages and obtained injunctive relief.[6] The judgment is in their favor.[7] Defendants did not "prevail" on any claims, as no counterclaims remained for trial.

2.      **Standard of Proof**

Because plaintiffs are the prevailing parties, the Court proceeded to consider whether the case is exceptional. The Tenth Circuit has held that an exceptional case "is one in which the trademark infringement is malicious, fraudulent, deliberate, or willful."[8] This Court acknowledged in its September 28 Order that the Tenth Circuit has never held that there must be clear and convincing evidence that the case is exceptional under the Lanham Act. Defendants do not disagree, nor could they. Instead, defendants take issue with the fact that the Court declined

---

[5]Defendants relied on plaintiffs' counsel to draft the proposed verdict form.

[6]*See Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006); *Post Office v. Portec, Inc.*, 913 F.2d 802, 812 (10th Cir. 1990) ("We hold that a finding of actual damage, regardless of the amount awarded, is sufficient to fulfill the Lanham Act's prevailing party requirement and thus is sufficient to support an award of attorneys fees . . . ."), *vacated on other grounds*, 499 U.S. 915 (1991).

[7](Docs. 363, 423.)

[8]*W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1273 (10th Cir. 2005); *United Phosphorus, Ltd. v. Midland Fumigant, Inc*., 205 F.3d 1219, 1232 (10th Cir. 2000); *VIP Foods, Inc. v. Vulcan Pet, Inc*., 675 F.2d 1106, 1107 (10th Cir.1982) (citing S. Rep. No. 93-1400, 93rd Cong., 2d Sess., *reprinted in* (1974) U.S. Code Cong. & Ad. News 7132, 7133).

4

to follow the Fifth Circuit[9] and an unpublished decision in the District of Utah.[10]

Of course, the Court is not bound by any of these decisions. Nor did the Court rule that clear and convincing evidence is the incorrect standard. Ultimately, the Court declined to decide the correct standard of proof, finding that under either standard, clear and convincing or a preponderance, the case is exceptional. Because the Court determined that there was clear and convincing evidence that defendants' infringement was malicious, fraudulent, deliberate, or willful, the Court need not reconsider its decision to refrain from predicting how the Tenth Circuit would rule on this question.

### 3. Significance of the Jury's Verdict on Willfulness

Next, defendants contend that the Court erred in placing any weight on the jury's finding of willfulness, rehashing the same arguments made in its initial brief. The Court considered these arguments in the first instance. While the Court noted that the jury explicitly found on the verdict form that the defendants acted willfully, it also independently found "ample evidence in the record that defendants acted willfully on the trademark infringement and unfair competition claims."[11] The Court found clear and convincing evidence of willfulness under this standard

---

[9] *See, e.g.*, *Bd. of Supervisors for La. St. Univ. v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir. 2008) (citing *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 490 (5th Cir. 2004)).

[10] *Hammerton, Inc. v. Heisterman*, No. 2:06-CV-806 TS, 2008 WL 4057010 (D. Utah Aug. 25, 2008) (acknowledging that Tenth Circuit cases do not address the proper level of proof required and applying clear and convincing evidence standard to showing for prevailing defendant pursuant to case law interpreting 35 U.S.C. § 285).

[11] In its September 28 Order, the Court relied on guidance from a 1990 Tenth Circuit decision, *Post Office v. Portec, Inc.*, 913 F.2d 802, 811–14 (10th Cir. 1990), *vacated on other grounds*, 499 U.S. 915 (1991). There, the court found that a jury's finding that the defendant's actions were willful and intentional, coupled with the district court's finding that the defendant's actions were willful and intentional, is sufficient to fit within its construction of the term "exceptional" under the Lanham Act. *Id.* Defendants suggest that it was error for this Court to rely on this decision, as it was later vacated on other grounds. This opinion was not vacated on the basis of the attorney fee award. Instead, the judgment was vacated and the case remanded by the Supreme Court in light of *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1 (1991), a case dealing with the punitive damages issue in *Portec.* By

based on Sinks' and Orth's trial testimony, as well as evidence that Sinks previously had been a licensee and that KU denied Sinks' application for a license to manufacture merchandise with the KU marks for the Joe-College.com business. Because the Court did not rely exclusively on the jury's finding of willfulness, reconsideration is not necessary on this basis.

### 4. Sinks' Trial Testimony

Defendants argue that the Court's reliance on Sinks' testimony as evidence of willfulness was in error. In the typical case, willfulness is "the intent to benefit from the goodwill or reputation of another."[12] The Court explained that Sinks repeatedly testified that he chose to design the T-shirts with the various KU marks in order to refer to KU and to appeal to KU fans. The Court found this to be strong evidence of intent.

Defendants first argue that the two examples of Sinks' testimony provided by the Court are not supportive of intent. They contend that because the Court found that judgment as a matter of law was not appropriate on the secondary meaning of certain KU marks, intentional use of those marks cannot form the basis of a willfulness finding. The Court disagrees. First,

---

stipulation of the parties, the appeal was dismissed with prejudice upon remand. 935 F.2d 1105 (10th Cir. 1991). Since then, the Tenth Circuit has cited to the original opinion numerous times on those issues not impacted by *Pacific Mutual*. *See, e.g.*, *Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1224 (10th Cir. 1998); *Klein v. Grynberg*, 44 F.3d 1497, 1503 (10th Cir. 1995); *Harvey Barnett, Inc. v. Shidler*, 200 F. App'x 734, 748 (10th Cir. 2006); *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1233 (10th Cir. 2000); *see also March Design, LLC v. TwinPro Int'l Holdings Ltd.*, No. 08-2108-CM/JPO, 2009 WL 37386, at *4 (D. Kan. Jan. 6, 2009).

In *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, the Tenth Circuit carefully examined application of *Portec* by another judge in this district to an attorneys' fee award under the Lanham Act. 205 F.3d 1219, 1233 (10th Cir. 2000). The issue in that case was whether the district court properly applied a twenty percent reduction of time spent on non-Lanham Act claims, relying in part on *Portec*. The Tenth Circuit found that the court had properly reduced the time based on the facts and circumstances of that case, and declined to find error because the reduction "happened to be the same amount as affirmed in [*Portec*]." *Id.* Neither the parties, nor the court took the position that *Portec* was inapplicable because it had later been vacated on other grounds. The Court declines to reconsider its citation to a published case from the governing court of appeals on this issue that was later vacated on other grounds and dismissed by stipulation of the parties. Even if this case has no binding authority, as defendants claim, it is clearly persuasive authority on this difficult issue.

[12]*W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1274 (10th Cir. 2005).

the standard on a motion for judgment as a matter of law—"if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position"[13]—is distinct from the Court's inquiry here. The Court is not to make credibility determinations or weigh evidence on a motion for judgment as a matter of law.[14] In contrast, the motion for attorneys' fees required the Court to make a factual finding with regard to willfulness.

Second, the Court's order merely provided examples of Sinks' testimony on intent. Sinks testified about his intent to benefit from the goodwill and reputation of KU at many points during his testimony with regard to the various marks used in the T-shirts found to be infringing. Sinks testified that he used the "Jayhawk" mark, intending to appeal to KU fans.[15] Sinks testified that he used the "Kansas" mark in order to appeal to KU fans.[16] Sinks testified at length about his choice to use the "Beware of the Phog," mark and that he intentionally chose that wording, along with the color and font to appeal to KU fans.[17]

Sinks argues that his testimony about his intentional use of these marks is countered by the disclaimers he posted in his store and on his website, informing customers that his T-shirts were not licensed or approved by KU. But Sinks admitted that such disclaimers would only address consumers at the point-of-sale. The disclaimers do not serve to discredit his clear testimony that he chose the marks at issue in this case with the intent to capitalize on the

---

[13]*Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000).

[14]*Id.*

[15]E.g., Doc. 335 at 144–45.

[16]E.g., Doc. 335 at 161–62.

[17](Doc. 335 at 219; *see* Trial Ex. 14.)

7

goodwill of KU, understanding that these marks were encountered by consumers most often outside the context of the disclaimers.

   5.   **Advice of Counsel**

In its September 28 Order, the Court found that the evidence at trial also showed that defendant Sinks previously was licensed to sell merchandise bearing the KU marks when he was affiliated with Midwest Graphics. Sinks had applied for a license from KU for his Joe-College merchandise and was rejected. This evidence established that Sinks was well aware that he was required to be licensed in order to sell T-shirts utilizing the KU marks; yet, when his license application was denied, he manufactured the shirts anyway.

Defendants contend that this evidence does not show willfulness because Sinks was advised by counsel that, despite the license rejection, he could continue to sell the T-shirts at issue in this case. During Sinks' testimony, he was asked about a cease and desist letter from KU, dated May 30, 2006.[18] Sinks testified that he sought legal advice from Bill Skepnek after receiving this letter.[19] Sinks testified that Skepnek advised him to stop selling four or five of his T-shirt designs, specifically those with the Jayhawk design and the word "Jayhawk." Sinks also testified that Skepnek did not recommend that Sinks stop making T-shirts that were "closely identified with the University."[20] Sinks did not explain what T-shirts he considered to be included in the category.

This argument was raised for the first time in response to the attorneys' fees motion.

---

[18] Trial Ex. 83.

[19] (Doc. 337 at 120.)

[20] (Doc. 337 at 221.)

8

During Sinks' deposition conducted during discovery, plaintiffs' counsel attempted to ascertain whether Sinks planned to rely on the defense of advice of counsel. Skepnek objected, claiming the questions asked for privileged information. At the end of the deposition, plaintiffs' counsel reserved to right to re-depose Sinks in the event that he asserted the defense at a later time.[21] Failure to disclose this defense during discovery constitutes waiver of the defense.[22] Defendants were on notice that plaintiffs were requesting attorneys' fees in the Pretrial Order and the Court deferred ruling on this issue in its summary judgment order.[23] While defense counsel elicited some brief testimony from Sinks on this issue at trial, he did not assert this as a defense to willfulness, nor did he seek a jury instruction on the defense. Whether advice of counsel is an affirmative defense has no bearing on the waiver analysis. Defendants' waiver of this defense stems from their assertion of privilege during discovery and their subsequent failure to ever assert the defense until they responded to the motion for attorneys' fees, effectively blocking plaintiffs from obtaining discovery about this defense. The Court finds this to be a classic instance of waiver of the defense.[24]

---

[21](Doc. 421, Ex. 1.)

[22]*Ramada Franchise Sys., Inc. v. Boychuk*, 283 F. Supp. 2d 777, 793 (N.D.N.Y. 2003); *Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001); *Inmuno Vital, Inc. v. Telemundo Grp., Inc.*, 203 F.R.D. 561, 564–65 (S.D. Fla. 2001); *cf. Takeda Chem. Indus. v. Mylan Labs., Inc.*, 459 F. Supp. 2d 227, 233–34 (S.D.N.Y. 2006), *aff'd*, 549 F.3d 1381 (Fed. Cir. 2008), *cert. denied*, 130 S. Ct. 106 (2009).

[23]*See Takeda Chem. Indus.*, 459 F. Supp. 2d at 233 (noting that the defendant made no secret of its intent to seek attorneys' fees).

[24]*See, e.g.*, *TakeCare Corp. v. TakeCare of Okla., Inc.*, 889 F.2d 955, 958 (10th Cir. 1989) (citing *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*, 580 F. Supp. 634, 638 (S.D.N.Y. 1984), where the court declined to award attorneys' fees based on "ample discovery made available including the deposition of counsel."); *Ramada Franchise Sys.*, Inc., 283 F. Supp. 2d at 564 ("By blocking Plaintiff's attempt to obtain discovery on the legal advice rendered from outside counsel on the disputed issue, Defendants unfairly attempted to use the privilege as a sword to bolster and protect its advice of counsel defense. This result is manifestly unfair to Plaintiff, and this unfairness mandates the exclusion of any evidence about the advice Defendants received from counsel on this issue . . . .").

Even if defendants had not so blatantly waived this defense, the evidence submitted at trial does not suffice to defuse their otherwise willful conduct. The Tenth Circuit has explained that in certain circumstances, the advice of counsel defense may be asserted:

> if a client seeks counsel's advice in a timely manner, makes adequate disclosure to counsel, receives counsel's opinion and then acts upon it, surely the Chancellor must pause before branding the client as a wilful, deliberate, fraudulent commercial thief. Absent this showing, counsel's advice alone will not shield the actor from the consequences of his act.[25]

In *TakeCare Corp. v. TakeCare of Oklahoma, Inc.*, the defendant filed a post-trial motion to amend the district court's findings of fact to show good faith reliance on the advice of counsel in order to avoid an award of attorneys' fees.[26] The defendant sought to offer a ten-page letter written by counsel that the defendant claimed to have relied upon.

The Tenth Circuit rejected plaintiff's proof of reasonable reliance on advice of counsel, despite the fact that the company's C.E.O. testified at trial that its attorneys had advised that it was alright to utilize the infringing mark, despite being notified by the plaintiff that its use constituted infringement. The Tenth Circuit concluded that:

> While we do not suggest any particular means of establishing good faith reliance on counsel is preferable, we do require some showing other than that offered in post-trial and appellate briefs in order to permit the district court to exercise its discretion properly in awarding attorney fees. On the record before us, defendant, having raised interstate trademark concerns previously, appeared to have relied solely on its counsel's opinion that its trademark was valid in Oklahoma. Under these circumstances, proof of reliance was insufficient. To otherwise now permit defendant to shim up its trial showing and conclude the

---

[25]*TakeCare Corp.*, 889 F.2d at 957.

[26]*Id.* at 956.

district court abused its discretion is not warranted.[27]

Here, the only evidence of counsel's advice is Sinks' brief and vague trial testimony. Skepnek did not testify about his advice, there was no discovery conducted about the advice, and defendants offer no independent record of the specific advice offered. Therefore, defendants are unable to establish good faith reliance. Weighed against Sinks' brief testimony on this matter was ample evidence that Sinks was a prior licensee of KU trademarks, that he sought a license in 2002 and was rejected, and had appealed that rejection. Despite his history and understanding of the licensing procedure, and the cease and desist letter, Sinks continued to manufacture and sell T-shirt designs that utilized plaintiffs' marks. Sinks trial testimony about Skepnek's advice in 2006 does not defuse the overwhelming evidence of his intent in this matter.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to Reconsider Memorandum and Order Dated September 28, 2009 Granting Plaintiffs' Motion for Attorneys' Fees and Expenses (Doc. 433) is **denied**.

**IT IS SO ORDERED.**

Dated: December 10, 2009

                                              S/ Julie A. Robinson
                                              JULIE A. ROBINSON
                                              UNITED STATES DISTRICT JUDGE

---

[27] *Id.* at 958; *see also Universal Motor Oils Co. v. Amoco Oil Co.*, 809 F. Supp, 816, 823 (D. Kan. 1992) (finding insufficient evidence of reasonable reliance).